PERRY NATIONAL BANK v. JOHN R. EIDSON ET AL.

No. A-7562. Decided October 19, 1960.
Rehearing Overruled December 21, 1960.
(340 S.W. 2d Series 483)

H. W. *Allen* and *Truman Roberts*, both of *Hamilton, Abney, Hammett & Lynch and J. N. Hammett*, of Lampassas, for petitioners.

*Rawlings, Sayers, Scurlock & Eidson*, of Fort Worth, *J. P. Rice*, of Dallas, *Tom Moore, Jr.* of Waco, *Magus F. Smith*, of McAllen, for respondents.

MR. JUSTICE NORVELL delivered the opinion of the Court.

The trial court rendered judgment upon special jury findings in favor of Perry National Bank and against John R. Edison and others who were the collateral heirs of James A. Eidson, a bachelor. The judgment as between the bank and the Eidson heirs was for the recovery of title and possession of a 443/500ths undivided interest in 600 acres of land located in Hamilton County, Texas. This portion of the judgment was reversed by the Court of Civil Appeals. That part of the judgment relating to the remaining 57/500ths interest was left undisturbed and need not be further noticed. 327 S.W. 2d 683.

This litigation arose from transactions between James A. Eidson and E. A. Perry, both of whom are now deceased. Whether such dealings resulted in Perry National Bank's acquiring outright ownership or merely a mortgagee's interest in the land and 443 shares of corporate stock of The Eidson Club Lake, a corporation organized by Eidson, is one of the disputed issues in the case.

This Court granted writ of error upon three points asserting in substance that:

1. The Eidson heirs are estopped to assert any claim to the 600-acre tract because of a boundary agreement dated July 5, 1940 by and between James A. Eidson and Perry National Bank.

2. The bank had secured title to the land under and by virtue of a deed executed by The Eidson Club Lake to Perry National Bank and a deed executed by James A. Eidson to E A. Perry and a subsequent quitclaim executed by Perry in favor of the bank.

3. The bank had secured title by virtue of becoming the owner of 453 shares of the capital stock in The Eidson Club Lake. This thesis is set forth in a dissenting opinion filed in the Court of Civil Appeals.

The transactions between James A. Eidson and the Perry National Bank were as follows:

On April 18, 1924, Eidson conveyed 600 acres out of an 1190-acre tract owned by him and located in Hamilton County, Texas, to The Eidson Club Lake, a Texas corporation, in exchange for 443 shares of the outstanding 500 shares of the corporation's capital stock.

On November 5, 1931 The Eidson Club Lake executed a deed purporting to convey the 600-acre tract to Perry National Bank. Also, on this date, James A. Eidson executed a deed which purported to convey the same tract of land to E. A. Perry, who was then the president of Perry National Bank. Eidson likewise delivered 443 shares of the capital stock in The Eidson Club Lake to the bank and executed a promissory note for $7,660.44 payable to the bank on May 5, 1932, presumably to evidence monies advanced to him. The deed from The Eidson Club Lake to the bank was filed for record shortly after its execution, but the deed from Eidson to Perry was not filed for record until April 4, 1940 at which time E. A. Perry also executed a quit-claim of the 600 acres to the Perry National Bank. In the application for writ of error it is stated that "Petitioner never denied that from 1931 to March 30, 1940, it, the bank, was a mortgagee."

On April 3, 1940 the bank executed an oil and gas lease on the 600 acres and subsequently executed other oil and gas leases.

On July 5, 1940 Perry National Bank and James A. Eidson executed an agreement purporting to fix and settle the boundary line between the 600-acre tract and the 590-acre tract. The agreement was made in connection with Edison's refinancing a loan on the 590-acre tract through the Federal Land Bank.

The records of the Perry National Bank show that the note executed by Eidson on November 5, 1931 was renewed and extended from time to time. The last of this series of notes was executed by Eidson on April 1, 1945 for the principal sum of $5,488.50, and due one year after date. E. A. Perry died on February 10, 1950 and James A. Eidson died on January 13, 1954.

By its first point, petitioner asserts that as a matter of law the recitals in the boundary line agreement of July 5, 1940 above mentioned absolutely estopped respondents from denying petitioner's ownership of the land in controversy. The principle asserted is that of estoppel by deed and petitioner relies upon Havard v. Smith, Texas Civ. App., 13 S.W. 2d 743, no wr. hist., and the authorities therein cited. However, the instrument here involved was not a deed but a contract and such contract is not the subject matter of this litigation. The circumstances surrounding the execution of the agreement were as follows: The record title to the 600-acre tract was in the Perry National Bank by virtue of a conveyance from The Eidson Club Lake

to Perry National Bank. At that time also the deed from Eidson to E. A. Perry and the quitclaim from Perry to the bank had been filed for record. The record title to the 590 acres was in Eidson who was securing a loan on the property from the Federal Land Bank. There was a fence upon the 590 acres which might possibly be considered as a dividing fence between the 600-acre tract and the 590-acre tract. The Federal Land Bank as a lender wanted it made clear that there were no claims adverse to Eidson extending to the fence which would cloud its title as a mortgagee in any way. As a result the boundary agreement was executed. It describes both tracts of land by metes and bounds and sets forth a definite boundary line between them. The instrument also recites that the fence heretofore mentioned is located upon the 590-acre tract and that the bank "does not now claim, and has neved claimed, any part of the land lying between the said fence and the true boundry line dividing our said lands, and Perry National Bank and J. A. Eidson expressly agree that said strip of land is a part of the security for Loan Number S-13722-S, in favor of the Land Bank Commissioner and also a part of the security for Loan Number 36112-S in favor of the Federal Land Bank of Houston, and that both the Land Bank Commissioner and the Federal Land Bank of Houston have liens upon said strip of land lying between the fence and the true boundary line separating said lands."

This instrument refers to Perry National Bank as the owner of the 600-acre tract and James A. Edison as the owner of the 590-acre tract. It is this recitation that is relied upon primarily as constituting an "estoppel by deed."

█ The boundary agreement was effective for the purposes intended. It would preclude the bank from asserting any claim against the Federal Land Bank to any portion of the 590 acres specifically described by metes and bounds. It was not, however, a deed or conveyance from Eidson to the bank of the 600 acres described therein. It did not purport to be a foreclosure of the mortgage which the bank held against the property. It did not operate as an estoppel against Eidson's showing that the 1931 deeds were actually given to secure a debt owed by him to the bank and hence constituted mortgage arrangements. We agree with the Court of Civil Appeals on this point. For example, the doctrine of estoppel does not apply to partition agreements, Hamilton v. Hamilton, 154 Texas 511, 280 S.W. 2d 588, and a recital in a simple contract is not binding in a suit which is not based upon the contract. 31 C.J.S. 235, Estoppel, Sec. 58. See

also 19 Am. Jur. 603, Estoppel, Sec. 6. Whatever may be the evidentiary value of this agreement with reference to other issues in the case, it does not operate as an estoppel which would preclude the claim of the Eidson heirs as a matter of law.

The second and third propositions above set out which are urged by the petitioner are based upon three findings of the jury[1], viz:

a. That on March 30, 1940 E. A. Perry executed a deed to the Perry bank with the intention of foreclosing a lien in behalf of the Perry National Bank.

b. That Perry National Bank during or prior to 1946 applied the stock in The Eidson Club Lake, a corporation, (assigned to the bank by James A. Eidson in 1931) to the extinguishment of a debt owed by Eidson to the bank.

c. That James A. Eidson knew or should have known of the application of such stock to the extinguishment of his debt.

■ When application for writ of error was granted, this Court held the tentative view that the Court of Civil Appeals by its judgment remanded this cause to the trial court for the limited purpose of ascertaining the amount due and owing by the Eidson estate to the Perry National Bank so that judgment in favor of the Eidson heirs for the recovery of the premises could be rendered upon the payment of such sum to the bank. Justices Smith, Culver and the writer are of the opinion that this tentative construction of the Court of Civil Appeals' judgment is correct. The majority of the Court, however, construe the judgment as providing for a general remand.[2] As might be expected, there are no cross-points filed.[3]

When effect is given to the majority view as to the nature of the judgment of the Court of Civil Appeals it necessarily follows that the cause as between the Eidson heirs and the Perry

1.—Six issues were submitted to the jury. One relating to adverse possession was answered unfavorably to the Eidsons. Two other related issues were not answered. These issues are not now material to a disposition of the case.

2.—The judgment of the Court of Civil Appeals remanded the cause insofar as it related to the controversy between the Perry National Bank and the Eidson heirs, to the district court for "further proceedings not inconsistent with the views expressed in the opinion." The nature of the judgment is therefore determined by an inspection of the opinion reported in 327 S.W. 2d 683.

3.—For a discussion of some of the procedural problems involved, see Calvert, " 'No Evidence' and 'Insufficient Evidence' Points of Error," 38 Texas Law Review 361.

National Bank must be returned to the trial court under a general remand upon the holding of the Court of Civil Appeals that the jury's findings are against the overwhelming preponderance of the evidence. Calvert, " 'No Evidence' and 'Insufficient Evidence' Points of Error," 38 Texas Law Review 361, l.c. 369.

■ To some extent at least, the writ was improvidently granted, but as the case is now before us, we will notice briefly the petitioner's contention that the majority of the Court of Civil Appeals adopted an erroneous formula or test in resolving the "overwhelming preponderance of the evidence" problem presented in connection with the jury's findings. In King v. King, 150 Texas 662, 244 S.W. 2d 660, it appeared that the Court of Civil Appeals had adopted a wholly erroneous rule in passing upon the "overwhelming preponderance" points. This Court held that:

"The holding of the court below is assigned as error here. It is in effect an erroneous ruling of law that the existence of 'any evidence of probative force' in support of the verdict determines that the verdict is not 'contrary to the overwhelming weight of the evidence.' It is in conflict with the above cited decisions of this court. *The holding also is tantamount to a refusal to pass upon the assignment in question* in violation of Rules 451 et seq., supra."

■ The rule for testing "no evidence" problems is not the same as that applicable to "overwhelming preponderance" situations. On the other hand, the "overwhelming preponderance" issue is one of fact over which the Court of Civil Appeals has exclusive jurisdiction. So long as that Court does not adopt a wholly erroneous approach which would be tantamount to a refusal to pass upon the "overwhelming preponderance" issue, this Court is without authority to remand a cause to the Court of Civil Appeals for a determination of such issue. Hubacek v. Ennis State Bank, 159 Texas 576, 325 S.W. 2d 124. Cf. Hubacek v. Ennis State Bank, 159 Texas 166, 317 S.W. 2d 30. It is the refusal of the Court of Civil Appeals to pass upon the issue, or action tantamount thereto, which authorizes this Court to act under the rule of the King case. Obviously in the present case, the Court of Civil Appeals has not failed to act nor has it applied a wholly inapplicable test in the solution of the "overwhelming preponderance" problem.

Further discussion is deemed unnecessary. That portion of the judgment of the Court of Civil Appeals affirming the judg-

ment of the trial court as to a 57/500ths interest in the 600-acre tract involved is affirmed. That part of the judgment of the Court of Civil Appeals relating to the remaining 443/500ths interest in the land which reverses the judgment of the trial court as to the controversy existing between the Perry National Bank and the Eidson heirs and remands the same generally for new trial, is likewise affirmed.

Opinion delivered October 19, 1960.

Mr. Justice Smith, dissenting.

I respectfully dissent to that part of the opinion ordering a general remand of this case. The nature of the judgment entered by the Court of Civil Appeals can best be determined by the controlling view expressed in the court's opinion, which is that there was no evidence supporting the jury findings. It is the height of folly to order a general remand in this case. The remand has been ordered merely because the Court of Civil Appeals, after writing several pages holding "no evidence," a complete absence of evidence, etc., on all of the controlling issues added:

"Moreover, we think the jury's answer to Issue No. 5 is so contrary to the overwhelming weight of all the evidence as to be clearly wrong and unjust under the doctrine announced in In Re King's Estate, 150 Texas 662, 244 S.W. 2d 660. What we have just said we think applies with equal force to the jury's answer to Special Issue No. 6." [327 S.W. 2d 691.]

In view of the court's holding on the no evidence points, there can be no doubt as to what the court meant when it said the jury verdict was clearly wrong and unjust. It was clearly wrong and unjust because there was no evidence to support the verdict, and not because of the doctrine in the King Estate case. There is not one word in the opinion prior to the declaration in regard to the King Estate case which can be construed to mean that the writer intended a general remand of this case. The remand was for one purpose only and that was for the trial court to determine the amount of the indebtedness and the legal interest due thereon.

The petitioner necessarily had to take this view, otherwise his petition for writ of error would have never been granted.

Why do I say the Court of Appeals, in effect, reversed and

remanded with instructions? The opinion groups the questions presented by Eidson. The court said:

"* * * We have grouped them into the following: (1) Since the evidence shows without dispute that the deeds in question and the stock were given in one transaction by Eidson to the bank for the purpose of securing his indebtedness to the bank, that such transaction created the relationship of mortgagor and mortgagee, and that such situation continued until it was proven otherwise; (2) Since the evidence shows that there was no foreclosure on the land or stock the relation of mortgagor and mortgagee continued to exist at all times between Eidson and the bank, and such relationship existed when appellants filed their suit; (3) That the jury's answer to issues I and 4 do not support a judgment in favor of the bank; (4) That the answers of the jury to issues 4, 5 and 6 are not sustained by the evidence, and that the answer to each of said issues is so contrary to the overwhelming weight of all the evidence as to be clearly wrong and unjust and will not sustain the judgment of the court."

Then the court proceeds to sustain each group of no evidence points. Now, if the court had held that there was some evidence to support the jury's answers, but that the answers of the jury were so contrary to the overwhelming weight of all the evidence as to be clearly wrong and unjust under the King Estate doctrine, a general remand would, no doubt, be in order. The record in this case shows beyond question that that Law Review Article by my distinguished Associatiate and the Per Curiam doctrine in King Estate has no application. The opinion in this case completely cuts the ground from under the bank and leaves no ultimate issue for a retrial, except the amount of indebtedness and interest. I would reverse and remand only for a determination of this latter question.

Opinion delivered October 19, 1960.

Rehearing overruled December 21, 1960.