**M. W. STAPLES et al., Appellants,**

v.

**RAILROAD COMMISSION of Texas et al., Appellees.**

**No. 10975.**

Court of Civil Appeals of Texas.

Austin.

June 6, 1962.

Rehearing Denied June 27, 1962.

Black & Stayton, Austin, for appellant.

George W. Hazlett, Cleveland, Ohio, Powell, Rauhut, McGinnis, Reavley & Lochridge, B. D. St. Clair, Larry Temple, Austin, Will Wilson, Atty. Gen., Houghton Brownlee, Jr., Linward Shivers, Asst. Attys. Gen., Austin, for appellee.

ARCHER, Chief Justice.

This is an appeal from an order granting a summary judgment that the plaintiffs, "M. W. Staples, Trustee, Bartessa Oil Corporation, T. A. Hester, Trustee, and Wynne M. Hill-Smith, take nothing by their suit, that all relief prayed for by said plaintiffs be denied, that defendants, the Railroad Commission of Texas and its members, and the intervenor, Sohio Petroleum Company, recover their costs herein, for which execution may issue, and that all relief sought by any party to this suit, which is not herein granted, is hereby denied."

In their original petition the appellants alleged that an application was filed with the Commission by the designated operator of a proposed secondary recovery and unitization program known as the Spraberry Driver Unit, located in the Spraberry Trend Area Field in Glasscock and three other counties, seeking the Commission's approval

of the program to be conducted according to the provisions of Art. 6008b, Vernon's Ann.Civ.St.

Plaintiffs alleged that they are and at all times pertinent, the owners of the mineral estate in the East one-half of Section 2, Block 36, Township 5 South, T. & P. R. R. Company Survey in Glasscock County, located immediately adjacent to the eastern boundary of the proposed Unit, and is within the area reasonably defined by development in the Field; that plaintiffs have never in any manner been given an opportunity to enter the proposed Unit upon the same yardstick basis as the owners of other tracts in the Unit, or upon any other basis.

Other allegations were made that upon hearing of the application, plaintiffs appeared and proved each of the matters alleged and that their rights and interests in the Field will not be protected under the operation of the Unit, but will be severely damaged, and the Commission was requested to refuse to approve the Unit until plaintiffs have been given an opportunity to enter the Unit.

Further allegations were that on August 15, 1960, the Commission approved the Unit and the proposed water flood operation and recognized plaintiffs' rights only to the extent of providing that water injection wells shall not be located closer than one mile from the Unit boundary unless waivers were had from offset operators, but that such provision would not be effective to eliminate the injuries which they will probably incur as a result of water flood operation. On August 29, 1960, the Commission overruled plaintiffs' motion for rehearing.

The plaintiffs alleged that the actions of the Commission with respect to the Unit are arbitrary, capricious, illegal and void and in violation of Art. 6008b, V.A.C.S., which requires the Commission to decline approval unless "the rights of the owners of all the interests in the field, whether signers of the unit agreement or not, would be protected under its operation," and unless "the owners of interests in the oil and gas under each tract of land within the area reasonably defined by development are given an opportunity to enter into such unit upon the same yardstick basis as the owners of interests in the oil and gas under the other tracts in the unit."

The Commission answered by general denial and that the plaintiffs have ratified the Unit agreement in written instruments and are estopped from bringing the suit; that the plaintiffs have waived any rights they may have had under the provisions of Art. 6008b, supra, by the execution and delivery of written ratification of the Unit agreement, and plaintiffs are each claiming property rights under the Unit agreement and may not now assert that the land claimed outside the Unit area is reasonably defined by production, or that the orders of the Commission are not valid; further, that the owners of interests in the oil and gas tracts of land in the area have been given an opportunity to enter the Unit on the same yardstick basis as the owners of other tracts in the Unit and that the rights of all owners will be protected under the operation of the Unit agreement; that each of these facts were expressly found by the Commission and such facts are reasonably supported by substantial evidence and that the order is reasonably supported by substantial evidence.

The Sohio Petroleum Company as the designated Unit operator filed its petition of intervention alleging the written agreement in the formation in the Spraberry Unit comprising 59,416 acres of land, and that intervenor has been designated as Unit operator and is the owner of substantial interest in the oil, gas and other minerals in the Unit and is an interested party affected by the orders of the Commission and will be adversely affected by an order of the Court setting the order under attack aside.

The intervenor plead estoppel and that the land owned by plaintiffs is not reason-

ably defined by development, and plead ratification and waiver, etc.

The defendant Railroad Commission and the intervenor filed a motion for summary judgment and as grounds recited in substance the matters alleged in the answers, which motion was sworn to and accompanied by an affidavit by O. D. Hyndman, Secretary of the Commission. Attached to said motion was a letter to intervenor from the Commission approving the Unit and a copy of such order, together with an affidavit of C. H. Burke, Custodian of the Records of intervenor, reciting the formation of the Unit agreement and the Unit operating agreement and ratification of Unit agreement executed by plaintiffs, the hearings before the Commission, and also setting out the sum of money shared by each of the plaintiffs.

Plaintiffs filed their answer to the motion for summary judgment setting out certain reasons why such judgment should not be granted, in substance the allegations in their original petition, duly sworn to, to which was attached an affidavit by Allen E. Humphrey, Vice President of Bartessa Oil Corporation, setting forth allegations concerning the ratification agreements, together with a letter from intervenor advising Mrs. Wynne M. Hill-Smith that according to the records she was the owner of a portion of the working interest in tracts 20 and 24 within the proposed Unit, but in order to be certain Mrs. Hill-Smith was requested to ratify the agreement, and stating that if no reply was had before a given date, the operator would assume that she did not consider her working interest to be committed to the Unit agreement. M. W. Staples, as trustee, made an affidavit concerning the ratification of the Unit and at the time of such ratification on November 17, 1959, neither of the interested parties had any interest in the subject tract.

The motion was heard and the summary judgment granted. The plaintiffs were denied any relief, and it is from this judgment this appeal is taken.

The agreement known as the Spraberry Driver Unit is long and contains many provisions for the formation of the agreement. Article 10 of the agreement is in part as follows:

"Enlargement of Unit Area:

"10.1 Inclusion of Proven Lands. The Unit Area may be enlarged from time to time to include lands that are contiguous with the Unit Area and are reasonably proved to be productive of Unitized Substances, the inclusion of any such lands to be upon such terms and conditions as Working Interest Owners may determine to be proper, subject, however, to the following provisions:"

In brief, the above provisions are: 10.1.1 must meet one of the requirements specified in Subsections 7.1.1, 7.1.2 and 7.1.3, which requirements provide as follows:

"7.1.1 That this agreement has been executed or ratified by the owner or owners of the entire Working Interest in the Tract, by the owner or owners of at least seventy-five percent of the royalties reserved to the lessor or lessors in the lease or leases (if any) covering the Tract, and by the owner or owners of at least seventy five percent of all other Royalty Interests (if any) in the Tract, or

"7.1.2 That this agreement has been executed or ratified by the owner or owners of at least ninety percent of the Working Interest in the Tract, and that inclusion of the Tract in the Unit Area has been approved by Working Interest Owners having at least sixty-seven percent of the combined voting interests attributable to Tracts included in the Unit Area which meet the requirement specified in Subsection 7.1.1, or

"7.1.3 That at least one owner of Working Interest in the Tract who has executed or ratified this agreement has also executed and delivered an under-

taking to indemnify all other Working Interest Owners against liability to each owner of Working Interest in the Tract who has not executed or ratified this agreement, and that such undertaking has been approved by Working Interest Owners having at least sixty-seven percent of the combined voting interests attributable to Tracts included in the Unit Area which meet either the requirement specified in Subsection 7.1.1 or the requirement specified in Subsection 7.1.2."

The other requirements are concerned with ratification by certain owners of the working interest in the tract. We do not see the need to copy further from the original agreement.

Article 6008b, supra, is the statute authorizing the Commission to approve pooled Units and cooperative facilities in secondary recovery operation, but is too long to copy herein.

Briefly, the Article provides for the approval of agreements by persons owning production, leases, royalties, etc. in separate properties in the same oil field, gas field or oil and gas field, pooled for the purpose of Units necessary to effect secondary recovery operations for oil or gas, including cycling, recycling, flooding, etc., and to establish pooled Units and facilities for extracting the hydrocarbons from the natural gas and returning the dry gas to a formation underlying any lands committed to the agreement.

Further provisions are that such agreements shall not become lawful until the Commission finds that such is necessary to extract the gas or oil under secondary recovery operations; "that it is in the interest of the public welfare as being reasonably necessary to prevent waste, and to promote the conservation of oil or gas or both; and that the rights of the owners of all the interests in the field, whether signers of the unit agreement or not, would be protected under its operation".

Appellants base their appeal on eight points and are to the effect that the Court erred in granting the summary judgment because there were disputed issues of fact to be determined by a trial on its merits; that the execution of the Unit agreement bound them as to the tracts included therein, and not the rights in the subject tract; that Art. 6008b, V.A.C.S., protects signers as well as nonsigners of a Unit agreement; that appellants are asserting independent statutory rights accruing to them as owners of the tract illegally excluded from the Unit; that appellants are not relying on inconsistent rights; that if the agreement did bind the appellants such is illegal; that appellees did not show any material reliance resulting from the signing of the agreement as owners of the tracts included therein; and that since the Commission is not a party to the agreement on which such defense is based, Sohio, as an intervenor, cannot raise any issue not available to the original parties.

■ We do not believe that appellants are estopped to maintain their suit to have the East ½ of Section 2 included in the Unit.

In the agreements, tracts 20 and 24 are included in the Unit agreement. The subject tract (East ½ of Sec. 2) was not owned by appellants at the time of the making of the Unit agreements, by execution or ratification. The owners of the subject tract have never been given an opportunity to enter the Unit on any basis.

In order to sustain a summary judgment based on estoppel, the appellees must grant that appellants are correct on the merits of the case.

■ As stated in Spence v. State National Bank of El Paso, 5 S.W.2d 754, Comm. App., Sec. B, " * * * estoppel does not make valid the thing complained of, but merely closes the mouth of the complainant."

No prejudice has been shown and no estoppel established.

In Faubian v. Busch, Tex.Civ.App., 240 S.W.2d 361, 366, writ ref., N.R.E.:

" 'Waiver' is the intentional relinquishment of a known legal right which is at the time available, and a person cannot waive a right before he is in position to assert it."

Peoria Life Ins. Co. v. Poynor, Tex.Civ. App., 297 S.W. 788, writ dism.

The principle of estoppel and waiver is not applicable in this case, there being no effort on the part of appellants to enforce some provision of the Unit agreement itself. Perry National Bank v. Eidson, 161 Tex. 340, 340 S.W.2d 483.

This is an appeal from an administrative order of the Commission wherein it was alleged that the order approving the Unit is invalid because the subject tract is not included and the Commission is the only necessary party and the intervenor must take the case as it finds it. The pleas of estoppel and waiver are based entirely on transactions which concern only the appellants and the intervenor Sohio, and the Commission has no independent right to maintain any defense of estoppel or waiver arising out of the execution of the agreement or the performance thereof. Buckner Orphans Home v. Berry, Tex.Civ.App., 332 S.W.2d 771.

Appellees rely upon the execution of the Unit agreement as estopping appellants and have cited a number of cases, such as Gress v. Gress, Tex.Civ.App., 209 S.W.2d 1003, er. ref., N.R.E.; Everett v. Everett, Tex.Civ.App., 309 S.W.2d 893, er. ref., N.R.E., and cases therein cited.

We believe that the Court was in error in granting the summary judgment under the provisions of Rule 166–A, Texas Rules of Civil Procedure.

There were issues alleged by appellants as to the location of the tract, its similarity to the adjoining properties in the Unit and to underground conditions as to oil and gas to be determined, and all doubts as to the existence of a genuine issue as to material fact must be resolved against the party moving for summary judgment. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W. 2d 929; Cowden v. Bell, 157 Tex. 44, 300 S.W.2d 286.

The judgment of the Trial Court is reversed and remanded.

Reversed and remanded.