**PURE ICE & COLD STORAGE COMPANY,**
**Appellant,**

**v.**

**EXCHANGE BANK & TRUST COMPANY,**
**Appellee.**

**No. 16791.**

Court of Civil Appeals of Texas.

Dallas.

Oct. 7, 1966.

Rehearing Denied Nov. 18, 1966.

Biggers, Baker, Lloyd & Carver and John C. Biggers, Dallas, for appellant.

**320**

Bailey, Williams, Weber & Allums and Lawrence R. Maxwell, Jr., Dallas, for appellee.

DIXON, Chief Justice.

Appellant Pure Ice & Cold Storage Company seeks to hold appellee Exchange Bank & Trust Company liable on a check payable to appellant drawn on appellee as drawee bank. Appellant's claim is based on the undisputed fact that appellee, after refusing payment of the check because of insufficient funds, failed to return the dishonored check within the time prescribed in Art. 342–704 Vernon's Ann.Civ.St., the Texas Banking Code.*

The parties have stipulated that on Friday September 21, 1962, appellant received a check drawn on appellee as drawee bank, payable to appellant in the amount of $4,-500.00 and signed by James O. Calvin, doing business as Mid-West Meat Company. On Monday September 24, 1962 appellant deposited the check to its account in the Mercantile National Bank at Dallas. On Monday September 24, 1962 the Mercantile Bank forwarded the check through clearing house channels to appellee. On Tuesday September 25, 1962 appellee received the check. On Thursday September 27, 1962 appellee returned the check to the clearing house dishonored because of insufficient funds. Mercantile Bank, in ac-

cordance with appellant's instructions, again placed said check in the usual course of banking channels through the clearing house on two other separate occasions following September 27, 1962. On each of said two other occasions appellee, the drawee bank, within the time prescribed by law returned the check dishonored because of insufficient funds.

It is undisputed that on October 6, 1962 appellant accepted Calvin's demand note in the amount of $28,700.00 bearing ten per cent interest from maturity and providing for ten per cent attorney's fees. The principal amount of $28,700.00 covered not only the check here in controversy, but other bad checks dated from October 21, 1962 to October 28, 1962 received by appellant from Calvin.

A jury returned a verdict finding in substance that (1) the authorized agents of appellant did not know and should not have known that appellee had held the check in excess of twenty-four hours; (2) appellant, acting through its agents, accepted return of the check on September 27, 1962; (3) in accepting the return of the check, and (4) in "re-clearing" the check and (5), (6) in accepting a promissory note from Calvin appellant did not waive appellee's acceptance of the check by holding it in excess of twenty-four hours; (7) appellant at the time it originally accepted the check

---

* The provisions of the statute, material here, are as follows:

"* * * items presented to a drawee bank shall be received by it, * * * shall be conditional and subject to revocation during the day on which the item is presented * * * or until midnight of the banking day after the day of presentment, exclusive of Sundays and holidays, if it is finally determined that the drawee bank was not at the time of presentment * * * obligated to pay the item, and if the drawee bank shall within that time refuse payment and return the item, * * *:

"2. If the item is presented through a clearing house, the drawee bank shall, within the time prescribed, return the item to the clearing house presenting it.

"3. * * * If the drawee bank in

refusing payment of any item fails to comply with the provisions of this Article within the time above prescribed it shall, at the *election of the owner of the item*, be deemed to have accepted the item, and shall be liable for the amount thereof." (Emphasis ours).

The 1957 amendment to the statute substituted "or until midnight of the banking day after the day of presentment" for "or within twenty-four (24) hours after presentment". Both parties in this case have nevertheless tried the case as if the twenty-four hour provision were still in effect. It probably is immaterial for the fact is undisputed that the check was not returned before midnight of the banking day after the day of presentment.

from Calvin did not know that Calvin did not have funds on deposit with appellee sufficient to pay the check; and (8) appellant by accepting delivery of the check did not waive the acceptance of the check by appellee Bank under the Statute.

Appellant filed a motion for judgment on the verdict. Appellee filed a motion for judgment non obstante veredicto. Appellee's motion was sustained and judgment was rendered accordingly that appellant take nothing against appellee.

S. A. Kadane, appellant's President and owner of fifty-eight per cent of the corporation's shares of stock, testified in behalf of appellant. For several years Calvin had been a tenant of appellant in the latter's warehouse building. His credit was not good. Sources of his meat supply would not accept his check. They would accept appellant's check. S. A. Kadane liked Calvin and wanted to help him financially.

Kadane described the plan which had been devised to enable him to help Calvin. The latter would write his check payable to appellant, drawn on appellee as drawee bank. At the same time appellant's check signed by Kadane as President payable to Calvin and drawn on Mercantile National Bank at Dallas would be issued to Calvin, who would pay cash for meat, using appellant's check.

This controversy had its origin in one of the above transactions. According to Kadane appellant and Calvin had exchanged checks more than a hundred times over the years, and none of Calvin's checks had been returned unpaid until the return of the check here in controversy and the return of Calvin's other checks signed between September 21, 1962 and September 28, 1962.

The record shows that on September 27, 1962 Calvin signed and delivered to appellant three of his checks, one for $3,800.00, one for $4,300.00 and one for $4,000.00. On the same date appellant delivered to Calvin

three checks in like amount signed by Kadane as President of appellant. Two of appellant's checks were dated September 27, 1962. The third check, according to Kadane, was delivered to Calvin on September 27, 1962, but was post-dated to the next day, September 28, 1962. The record shows that two of these checks were cashed by Calvin at the Mercantile Bank on September 27, 1962, the other on September 28, 1962.

Kadane claims that if he had known on September 26, 1962, that Calvin's check for $4,500, dated September 21, 1962 had been returned unpaid because of insufficient funds, he would not have issued appellant's three checks to Calvin on September 27, 1962 in exchange for three of Calvin's checks which were later returned unpaid because of insufficient funds.

In four points on appeal appellant in substance complains of the error of the Court in (1) overruling appellant's motion for judgment on the verdict; (2) in granting appellee's motion for judgment non obstante veredicto; (3) in overruling appellant's motion for instructed verdict, filed prior to the submission of the charge to the jury; and (4) in submitting any special issues to the jury, the material facts being undisputed.

We agree with appellant that it was error for the court to overrule appellant's motion for judgment on the verdict and error to grant appellee's motion for judgment non obstante veredicto and that we should therefore reverse the trial court's judgment and render judgment in favor of appellant. See State Bar of Texas "Appellate Procedure in Texas", Section 18.17(4) and cases cited.

■ Since this is a judgment non obstante veredicto it must be reversed unless it is determined that there is no evidence on which the jury could have made the findings relied on by appellant. Leyva et vir. v. Pacheco, 163 Tex. 638, 358 S.W.2d 547, 550. We are of the opinion that the

record discloses ample evidence to support the jury's material findings.

It is undisputed that appellee is the drawee bank and that it failed to return the dishonored check in controversy within the time prescribed by the statute. The statute itself has been upheld. Carder et al. v. Tyler Bank & Trust Co., D.C., 132 F. Supp. 495, aff. 5 Cir., 224 F.2d 687, cert. denied 350 U.S. 913, 76 S.Ct. 197, 100 L. Ed. 801; Tyler Bank & Trust Co. v. Saunders, 159 Tex. 158, 317 S.W.2d 37, 40; College Station State Bank v. Fulcher et al., Tex.Civ.App., 296 S.W.2d 953, 955, no writ. hist.; City State Bank in Wellington v. National Bank of Commerce, Altus, Okl., Tex.Civ.App., 261 S.W.2d 749, ref. n. r. e.

In the Saunders case, above cited, our Supreme Court held that the Bank was not liable under the statute because it was acting as a collecting bank for Saunders, not as a drawee bank. However, the opinion contains this significant statement:

"* * * The solution of such issue necessarily requires this Court to determine whether under the record in this case the Tyler Bank is a drawee bank within the meaning of Article 342–704, supra. *If it is, then without question under the facts in this case, it is liable.*" (Emphasis ours.)

■ We do not agree with appellee when it says in its second counterpoint that there is no evidence in the record that appellant exercised its election to hold appellee liable under the statute. The fact that appellant has filed this suit, to which Calvin is not a party, and has prosecuted the *suit to judgment is itself evidence* that appellant has elected to hold appellee liable. State v. Compton, Tex.Civ.App., 174 S.W. 2d 977; Payton v. Travis County, Tex. Civ.App., 129 S.W.2d 361, error dis. Judg. correct; Gerard et ux. v. National Bond & Mortgage Corp., Tex.Civ.App., 86 S.W.2d 74, error ref.; National Surety Co. et al., v. Odle et al., Tex.Civ.App., 40 S.W.2d 876, no writ. hist.; Rick et al. v. Farrell et al.,

Tex.Civ.App., 266 S.W. 522, no writ. hist.; Marshall et al. v. Mayfield et al., Tex.Com. App., 227 S.W. 1097, opinion adopted; Biard & Scales v. Tyler Building & Loan Ass'n, Tex.Civ.App., 147 S.W. 1168, no writ. hist.; Sanger Bros. v. Corsicana National Bank, Tex.Civ.App., 87 S.W. 737, 739.

■ Neither do we agree with appellee when it asserts in its third and fourth counterpoints that appellant as a matter of law waived the acceptance by appellee of the check in question; and that there is no evidence of probative value to support the jury's answers to Special Issues Nos. 3, 4, 6 and 7.

In its brief appellee concedes that the court in its charge correctly defined waiver as "A *voluntary* or *intentional* relinquishment of a *known* right or such conduct as warrants an inference of the relinquishment of such right." (Emphasis ours.)

Our Supreme Court has held that waiver is a question of fact where it is a matter of inference. Ford et al. v. Culbertson, 158 Tex. 124, 308 S.W.2d 855, 865. The evidence in this case is such that the jury might well infer, and obviously it did infer, that appellant had not waived its right to hold appellee liable.

■ In circumstances like those present here the question of intention is a very important and necessary element in establishing waiver. Ford v. Culbertson, supra. See also Stowers v. Harper, Tex.Civ.App., 376 S.W.2d 34, 40, ref. n. r. e.; Staples et al. v. Railroad Commission of Texas, Tex. Civ.App., 358 S.W.2d 706, ref. n. r. e.; Ferrantello et al. v. Paymaster Feed Mills, Tex. Civ.App., 336 S.W.2d 644, 647, ref. n. r. e.; Dewitt v. Kent County et al., Tex.Civ.App., 148 S.W.2d 213, 217, no writ. hist. In the Stowers case, above cited, it is said; "Intention is a prime factor in determining the question of waiver. The acts, words or conduct relied upon to establish intention must be such as to manifest an unequivocal intention to no longer assert the right."

With the court's definition of waiver before it the jury plainly made an implied finding that appellant did not *intend* to waive its right.

Appellee leans heavily on statements made by Kadane on cross-examination as follows:

"Q. And you were attempting to get payment of this check?

"A. Right.

\* \* \* \* \* \*

"Q. Did you at this time intend for this check to be paid by anybody other than the Mid-West Meat Company?

"A. No, I had nobody to look to on it.

\* \* \* \* \* \*

"Q. \* \* \* I assume you mean by that that the Mercantile went back and debited your account, or they charged the checks back to your account or took the money out of your account?

\* \* \* \* \* \*

"A. What else were they going to do with it? Going to throw it out the window?

"Q. Now, what did you do?

"A. I just took it on the chin. What else could I do?

"Q. Well, didn't you go see Mr. Calvin yourself?

"A. Oh, yes, I have talked to him several times.

"Q. Well, didn't you get him to sign a promissory note?

"A. Yes, sir."

\* \* \* \* \* \*

However Kadane also testified as follows:

"Q. Mr. Kadane, when did you first know that you had a cause of action against the Defendant, Exchange Bank?

"A. After I got the—all the checks— some of the checks had been returned, I first went to the District Attorney's office and talked to Henry Wade \* \* \*.

"Q. \* \* \* following your conversation with District Attorney Wade, did you contact our law firm?

"A. Yes, sir, then I went to you.

"Q. And then did you subsequently file this lawsuit against the Exchange Bank and Trust Company?

"A. Yes, sir, I asked you to prepare it. \* \* \*"

From the above testimony it might be inferred that at the time in question appellant was not aware of its right—therefore it could not have waived a *known* right. In any event the above quoted testimony together with other evidence in the record raises a fact question as to intention—a necessary element in waiver in this case.

In its first counterpoint appellee says that there is no evidence to support the jury's answer to Special Issue No. 1. This issue asked the jury to find from a preponderance of the evidence whether on September 27, 1962 the authorized agents of appellant knew or ought to have known that appellee had held the check in question in excess of twenty-four hours. The jury answered "No".

The above issue and the answer to it are evidentiary; and in the light of the jury's answers to the other issues, Special Issue No. 1 and the answer to it are immaterial.

■ Even if appellant or its agents knew on September 27, 1962 that appellee had held the check in excess of twenty-four hours, or if the jury had so found in answering Special Issue No. 1, such knowledge or finding would not have negatived and would not have been in conflict with the jury's other implied findings that appellant had not *intentionally* waived a *known* right. Under such circumstances

**324**

it did not make any difference whether appellant knew or did not know that appellee had held the check in excess of twenty-four hours. Consequently the jury's answer to Special Issue No. 1, even if unsupported by evidence, should have been ignored by the trial court in rendering judgment on the verdict and will be ignored by this Court. American Mutual Liability Ins. Co. v. Parker et ux., 144 Tex. 453, 191 S.W.2d 844, 848; Schiller v. Rice, 151 Tex. 116, 246 S.W.2d 607, 615; Miller v. Miles, Tex.Civ.App., 400 S.W.2d 4, ref. n. r. e.; Houston Lumber Supply Co. et al. v. Wockenfuss et ux., Tex.Civ.App., 386 S.W.2d 330, 337, ref. n. r. e.; Kelley v. Goodrum, Tex.Civ.App., 378 S.W.2d 935, 938, no writ. hist.; Owens v. State, Tex.Civ.App., 342 S.W.2d 183, 184, no writ hist.; Robertson Transport Company v. Hunt, Tex.Civ.App., 345 S.W.2d 293, 295, no writ. hist.; Texas Employers Ins. Ass'n v. McDowell, Tex. Civ.App., 278 S.W.2d 444, 447, ref. n. r. e.; Brown et al. v. O'Meara, et al., Tex.Civ. App., 206 S.W.2d 122, 125, no writ. hist.; Dunning v. Popular Dry Goods Co., Tex. Civ.App., 146 S.W.2d 835, 837, writ. Dism.; Southern Pine Lumber Co. v. Andrade, 132 Tex. 372, 124 S.W.2d 334, 335, not writ. hist. Therefore, we deem it unnecessary to pass on appellee's first counterpoint and we do not do so.

Appellant's first point on appeal is sustained. Its other points are overruled.

The judgment of the trial court is reversed and judgment is here rendered that appellant recover judgment for its damages. The amount of the judgment is to include as damages the principal sum of $4,500.00 plus interest at the rate of six per cent per annum from September 27, 1962 to January 28, 1966, the latter being the date when the judgment was signed by the trial court. Watkins v. Junker, 90 Tex. 584, 40 S.W. 11; Houston Gas & Fuel Co. v. Perry et al., 127 Tex. 102, 91 S.W.2d 1052, 1056 (Tex.Com.App. opinion adopted); Statler Hotels v. Herbert Rosenthal Jewelry Corp., Tex.Civ.App., 351 S.W.2d 579, 585 (ref.

n. r. e.); De Leon v. Aldrete, Tex.Civ.App., 398 S.W.2d 160, 164 (ref. n. r. e). The judgment so rendered will bear interest at the rate of six per cent per annum until paid. All costs are taxed against appellee.

Reversed and rendered.