**H. A. LOTT, INC., Appellant,**

**v.**

**PITTSBURGH PLATE GLASS COM-PANY, Appellee.**

**No. 7864.**

Court of Civil Appeals of Texas.

Amarillo.

Sept. 23, 1968.

Anderson, Edwards & Warnick, Lubbock, for appellant; Cleddie F. Edwards, Lubbock, of counsel.

Matthews & Matthews and Arthur G. Schroeder, Jr., Dallas, O'Connor & Brister, and Bill H. Brister, Lubbock, for appellee.

DENTON, Chief Justice.

Pittsburgh Plate Glass Company brought suit against H. A. Lott, Inc., the general contractor, as a supplier of materials and labor to a subcontractor of Lott, under the provisions of Article 5160, Vernon's Ann. Civ.St., known as the McGregor Act. Both parties filed motions for summary judgment. Lott's motion was overruled and plaintiff's motion was granted.

Lott was the general contractor for the construction of a student dormitory for Texas Technological College in Lubbock. Pittsburgh Plate Glass Company furnished labor and materials to Artex Corporation, a subcontractor of Lott. The first material and labor appearing in the record which Pittsburgh furnished to Artex is evidenced by a purchase order dated September 24, 1963 and one dated September 25, 1963 in the total amount of $2479.00. Neither of these invoices were paid by Artex. A second request for payment was also not honored. Two separate letters, both dated November 13, 1963, demanded payment from Artex. Pittsburgh's credit manager notified Lott by certified mail dated November 15, 1963 of the two outstanding invoices owed by Artex. On or about November 19, Pittsburgh's credit manager received a telephone call from Larry Eastep, general superintendent for Lott on the Lubbock job, concerning Artex's indebtedness. On this same date, Eastep wrote Pittsburgh as follows:

"Concerning our telephone conversation this date, we have agreed to pay your two outstanding invoices to Artex Corporation of Summerville, S.C. and back charge their account * * * We further understand that no liens will be filed against this project if the invoices are paid."

Lott subsequently paid Pittsburgh the amount of $2479.00 on December 5, 1963. In the meantime, additional labor and materials were being furnished to Artex by

Pittsburgh in the total amount of $1768.87. After Artex failed to respond to Pittsburgh's request for payment, Lott was notified by letter of such nonpayment on February 19, 1964. Sometime during this period Artex assigned its account with Lott to James Talcott, Inc. In response to other notices, Allen C. Farnsworth, the President of H. A. Lott, Inc. wrote a letter dated April 10, 1964, to Artex with copies to Pittsburgh, Sterling Building Materials, another creditor of Artex, and to Talcott. The first paragraph of that letter read as follows:

"According to our records there is a balance of slightly over $5,400.00 on the Texas Tech contract. We have been properly notified under the provisions of the McGregor Act of the State of Texas of an outstanding balance due by Artex to Pittsburgh Plate Glass Company, Lubbock, Texas, in the sum of $1,572.87 for work performed on this contract. In order to avoid a lien being filed, we desire the Pittsburgh matter be paid and ask that you confirm to us via return mail your approval of our issuance of a joint check to Pittsburgh and to you for this amount."

On April 27, 1964, Lott issued a joint check to Artex and Pittsburgh in the amount of $1768.87, the agreed final amount owed by Artex to Pittsburgh. It was stipulated by the parties here that prior to the presentment of this joint check, Artex assigned all its assets to Talcott and Artex was thereafter adjudged a bankrupt. The bankruptcy court refused to allow Artex to endorse the check in question and all sums due Artex under its subcontract with Lott were subsequently paid to Artex's assignee, Talcott, by Lott.

Appellant Lott contends the court erred in granting summary judgment because proper and timely notice was not given as required by Article 5160; that there is nothing in the record of any action of Lott which would constitute waiver or estop Lott from relying on the notice provisions of Article 5160; and the pleadings and affidavits raised genuine issues of fact. On the other hand, Pittsburgh contends appellant waived compliance with requirements of notice required by Article 5160 and that there are no material fact questions raised by the record.

As we view the facts and circumstances of the instant case, the sufficiency and timeliness of the notices are not in issue. Paragraph B(b) (2) of Article 5160 requires that a claimant who, like Pittsburgh, had no contractual relationship with the prime contractor, shall give written notice by certified or registered mail to the prime contractor within thirty-six (36) days after the 10th of the month following each month in which the material was delivered or labor performed. However, our courts have uniformly held that compliance with the notice provisions of Article 5160 may be waived. United Benefit Fire Insurance Company v. Metropolitan Plumbing Co. (Tex.Civ.App.) 363 S.W.2d 843. General Insurance Company of America v. Smith & Wardroup, Inc. (Tex.Civ. App.) 388 S.W.2d 262 (Ref. N.R.E.). Trinity Universal Insurance Company v. McLendon (Tex.Civ.App.) 390 S.W.2d 399 (Ref. N.R.E.). Graham v. San Antonio Machine & Supply Corporation (Tex.Civ. App.) 418 S.W.2d 303 (Ref. N.R.E.). In order to waive a right or privilege given by statute or otherwise, the obligor's conduct must amount to an intentional relinquishment of some known right that is available at that time. Ford v. Culbertson, 158 Tex. 124, 308 S.W.2d 855. Staples v. Railroad Commission of Texas (Tex.Civ. App.) 358 S.W.2d 706 (Ref. N.R.E.).

Assuming, arguendo, Pittsburgh's notices were not sufficient, Lott had full knowledge of Pittsburgh's claims against Artex. They responded to these notices by numerous letters and a telephone call. All of Lott's communications were directed to the stated intention of assuring that

Artex's indebtednesses be paid. Lott did in fact pay Pittsburgh the accumulated amount due at that time in December 1963, and after further notices issued a joint check payable to both Artex and Pittsburgh, which was a clear intent to pay the final indebtedness. Lott's letter of April 10, 1964 conceded: "We have been properly notified under the provisions of the McGregor Act * * * of an outstanding balance due by Artex to Pittsburgh Plate Glass Company * * *. In order to avoid a lien being filed, we desire the Pittsburgh matter be paid * * *." On April 27, following this letter, Lott did in fact issue the joint check in final settlement of all claims by Pittsburgh. The check was not paid when the bankruptcy court refused to permit Artex to endorse the check.

Ordinarily, whether or not there has been a waiver is a question of fact, but the question becomes one of law where the facts and circumstances are admitted or clearly established. Foster v. L.M.S. Development Company (Tex.Civ.App.) 346 S.W.2d 387 (Ref. N.R.E.). Dallas Farm Machinery Company v. Minneapolis-Moline Company (Tex.Civ.App.) 324 S.W.2d 578. Appellee's motion was supported by an affidavit by Pittsburgh's credit manager; numerous exhibits including the Lott letters before mentioned, in addition to certain admissions by appellant. The record contains no affidavits or exhibits or admissions in support of appellant's motion for summary judgment or in opposition to appellee's motion for summary judgment. We therefore hold that the record clearly supports the conclusion that Lott, by its own affirmative acts and conduct, waived as a matter of law the compliance of the notice requirements of Article 5160, and is estopped to deny liability of Pittsburgh's claim.

In view of this holding, we do not deem it necessary to consider and determine the other questions presented by both parties.

The judgment of the trial court is affirmed.