

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00025-CV

_____


TEXIE BECKETT CARSON NASH, EXECUTRIX OF THE
C.M. BECKETT, JR. ESTATE AND SUCCESSOR TRUSTEE OF
THE C.M. BECKETT, JR. TESTAMENTARY TRUSTS, Appellant

V.

BEVERLY BECKETT, Appellee


On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 08-0334


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

This is an appeal from a summary judgment in a declaratory judgment action which sought construction of the wills of C.M. Beckett, Sr., and Jo B. Beckett. The central issue is the distribution of assets of two separate terminated trusts. We find the wills require that each surviving heir is entitled to receive an equal share of the two trusts. We reverse and render the judgment of the trial court.

I.      **Background**

In 1957, C.M. Beckett, Sr., and his wife, Jo B. Beckett, each made wills establishing trusts for their two sons, C.M. Beckett, Jr., and Jerry B. Beckett. Each will provided for the equal division of estate assets between C.M., Jr. and Jerry, in trust, with income to each for life. Both wills directed the trustee to "divide the residue of my estate into two equal parts," each of which "shall be administered as a separate and distinct trust." Accordingly, two trusts were established—one in the name of C.M. Beckett, Jr., and the other in the name of Jerry B. Beckett. The principal and remainder of each trust were bequeathed to C.M., Jr.'s and Jerry's descendants.

The trusts were to continue for the life of C.M. Beckett, Sr., Jo B. Beckett, and their two sons. Upon the death of C.M. Beckett, Sr., and Jo B. Beckett and

> my two sons, all of the assets and properties of the trusts herein created shall be divided into as many equal shares as there are children of my two sons surviving together with an equal share per stirpes for the surviving child or children of any deceased grandchild, and such shares shall be immediately distributed to said grandchildren or great-grandchildren . . . .

2

After C.M., Sr. and Jo passed away in 1962,[1] C.M., Jr. and Jerry jointly administered the trusts, acting as co-trustees of each trust. When the brothers decided they could no longer work together in 1983, C.M., Jr. filed a partition lawsuit. As a part of the lawsuit's settlement, Jerry voluntarily resigned as co-trustee of the C.M. Beckett, Jr. Trust, leaving C.M., Jr. as the sole successor trustee of that trust. Likewise, C.M., Jr. voluntarily resigned as co-trustee of Jerry's trust. Jointly held trust assets were sold and equally divided between the two trusts.[2]

Thereafter, C.M., Jr. distributed certain assets of the C.M. Beckett, Jr. Trust to himself.[3]

Beverly Beckett was Jerry's sole surviving child when he passed away in 1986. Beverly's son, Brian Beckett, and Regions Morgan Keegan Bank are the successor co-trustees of the Jerry B. Beckett Trust.

---

[1]C.M. Beckett, Sr., and Jo B. Beckett both passed away in 1962.

[2]The final judgment indicates that all matters between the parties were compromised and settled and that an agreement had been reached. The judgment provided that Jerry and C.M., Jr. would resign as co-trustees of the Jerry B. Beckett Trust and that Jerry and Allied Bank of Texas were to be appointed successor co-trustees of the Jerry B. Beckett Trust for properties situated in the state of Texas; Jerry and Robert L. Duvall were appointed successor co-trustees of all properties of the Jerry B. Beckett Trust located in the state of Louisiana; Jerry resigned as trustee of the C.M. Beckett, Jr. Trust resulting in C.M., Jr. continuing to serve as the sole successor trustee of the C.M. Beckett, Jr. Trust; after audits and accountings of the trusts were completed, each respective trust was to receive (and presumably did receive) one-half of the net income derived from all income-producing properties of the trust; cattle, farmland, and equipment were to be sold for a suggested purchase price of $490,000.00; various other real properties were to be sold and the proceeds equally divided; all personal property owned by the trusts would be divided equally between such trusts; and all remaining real property was to be held and administered by the trustees of said trusts as tenants in common.

[3]In 1996, C.M., Jr., as trustee of the C.M. Beckett, Jr. Trust, deeded to himself, individually, 3.215 acres of land. In 1999, C.M., Jr., as trustee of the C.M. Beckett, Jr. Trust, deeded to himself, individually, certain real property in Harrison County, Texas. C.M., Jr. later sold (he is listed as grantor along with Texie Nash and husband, Michael) the property he acquired from the C.M. Beckett, Jr. Trust in 1996 to James Vanderburg, III, and wife, Amanda Vanderburg, for $249,000.00.

3

When C.M., Jr. passed away on April 25, 2007, he had one surviving child—Clint Murl Beckett, III, and one grandchild—Texie Beckett Carson Nash (the daughter of Jo Lynne Beckett Dyke, who predeceased her father, C.M., Jr.). Texie was appointed independent executrix of C.M., Jr.'s will, and she qualified to serve in that capacity in 2007. Texie became the successor trustee of the C.M. Beckett, Jr. Trust.

The trusts terminated as of April 25, 2007, the date of the last to die of Jerry and C.M., Jr. Thereafter, Texie filed a lawsuit seeking a declaratory judgment that all of the trusts' assets should be distributed equally to Texie, Clint, III, and Beverly.[4]

In his competing declaratory judgment action to construe the C.M. Beckett, Jr. and Jerry B. Beckett Trusts, Brian maintained that Beverly is the sole beneficiary of the Jerry B. Beckett Trust and Texie and Clint, III, are the sole beneficiaries of the C.M. Beckett, Jr. Trust.[5] Additionally, Brian asserted claims against Texie related to the administration of the C.M. Beckett, Jr. Trust.[6]

---

[4]In addition, Texie asserted breach of fiduciary duty and conversion claims against Brian based on alleged improper distributions from the Jerry B. Beckett Trust. The viability of these claims depends on whether it is ultimately determined that Texie is entitled to share in the Jerry B. Beckett Trust assets.

[5]Brian initially filed a declaratory judgment action against Texie after having received a demand letter from Texie in 2008 demanding Regions distribute assets of Jerry's trust in equal shares to Clint, III, Texie, and Beverly. Thereafter, Texie filed a separate declaratory judgment action, and the matters were consolidated. Beverly appeared in January 2009, when she filed her original answer to Texie's first amended petition for determination of trust as a necessary party and beneficiary under the Jerry B. Beckett Trust. The parties thereafter filed competing partial motions for summary judgment, which were denied. In June 2010, the trial court severed the "distribution issues" based on the parties' competing claims for accounting and breach of fiduciary duty. Thereafter, Texie filed her first amended motion for summary judgment and Beverly filed a motion for summary judgment. Brian did not file a motion for summary judgment in the second round.

[6]In this competing declaratory judgment action, Brian, in his capacity as successor co-trustee of Jerry's trust, sought to have the trial court declare Beverly the sole beneficiary of the Jerry B. Beckett Trust with Texie and Clint, III the sole

The competing declaratory judgment actions were consolidated in 2008. Thereafter, Texie and Beverly filed competing motions for partial summary judgment, each of which was denied by the trial court.[7] In 2010, Texie and Beverly submitted additional summary judgment briefing regarding the appropriate division of the trusts' assets, and more specifically, who should be entitled to share in the assets of the Jerry B. Beckett Trust. The trial court issued its order granting Beverly's motion for summary judgment and denying Texie's motion for summary

---

beneficiaries of the C.M. Beckett, Jr. Trust. Brian alternatively seeks an accounting of the C.M. Beckett, Jr. Trust, and claims a breach of fiduciary duty on the part of Texie, as successor trustee and as independent executrix of the estate of C.M. Beckett, Jr.

[7]In addition, Texie asserted breach of fiduciary duty and conversion claims against Brian based on alleged improper distributions from the Jerry B. Beckett Trust. In her motion to sever, Beverly alleges:

> Brian and Beverly have pleadings in the alternative should this Court determine that Texie and Clintus [sic] are entitled to shares of the Jerry B. Beckett Trust. Such a determination would necessarily include a determination that Beverly is entitled to one-third of the assets in the C.M. Beckett Trust. Should Beverly be entitled to one-third of the assets in the C.M. Beckett Trust, she has a claim against Texie and Clintus [sic] for improper distributions they have made out of the C.M. Beckett, Jr. Trust.

> Texie and Clintus [sic] have no claims regarding the handling of the funds in the Jerry B. Beckett Trust unless and until the finder of fact determines that they are entitled to a portion of the proceeds of that trust. Likewise, until such finding has been made, Beverly has no claims regarding the handling of the funds in the C.M. Beckett, Jr. Trust.

Beverly refers to the foregoing issues as the "distribution issue" in her motion to sever. In its severance order, the trial court

> ORDERED that the issue of how the assets of the Jerry B. Beckett Testamentary Trust and the C.M. Beckett, Jr. Testamentary Trust are to be distributed (the "Distribution Issue") is severed from all other issues and claims in the above-referenced litigation.

5

judget.[8]   The trial court concluded Beverly was entitled to 100 percent of the assets of the Jerry

B. Beckett Trust.[9]

## II.    Appellate Issues

On appeal, Texie asserts three points of error.   Her first and third appellate points complain of the summary judgment in Beverly's favor and the trial court's failure to grant summary judgment in her favor, or alternatively, its failure to find genuine fact issues regarding interpretation of the will.    Texie's second appellate point complains of the denial of her summary judgment motion on Beverly's affirmative defenses.

## III.    Standard of Review

We review declaratory judgments under the same standards as other judgments and decrees.   TEX. CIV. PRAC. & REM. CODE ANN. § 37.010 (West 2008); *Armstrong v. Hixon*, 206 S.W.3d 175, 179 (Tex. App.—Corpus Christi 2006, pet. denied).   We look to the procedure used to resolve the issue at trial to determine the standard of review on appeal.   *Armstrong*, 206 S.W.3d

---

[8]In granting Beverly's motion for summary judgment (and denying Texie's motion for summary judgment) the trial court found that there were two distinct trusts established for the two sons of C.M. Beckett, Sr., and Jo Beckett—Jerry B. Beckett and C.M. Beckett, Jr.   The power of appointment, reasoned the court, also follows a separate, two-trust track by providing both sons the ability to designate the division of the individual trusts within the confines of their individual wills.   Further, the trial court found the disposition of trust assets set forth in the two sons' wills is consistent with the testators' intent that trust assets pass to C.M., Jr.'s and Jerry's children and grandchildren.

[9]After the trial court entered its order granting Beverly's motion for summary judgment, it issued a separate declaratory judgment disposing of the assets of the Jerry B. Beckett Trust.   The judgment provides that Beverly is entitled to receive the entirety of the assets remaining in the Jerry B. Beckett Trust.   In addition, the trustees of the Jerry B. Beckett Trust were ordered to continue to pay Beverly $7,000.00 per month, per prior order of the court, until the judgment becomes final.

6

at 179; *Guthrey v. Taylor*, 112 S.W.3d 715, 720 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Here, the trial court determined the declaratory judgment issue through summary judgment proceedings.

A traditional motion for summary judgment is granted only when the movant establishes there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). An appellate court reviews de novo the grant or denial of a motion for summary judgment. *Id.* Where, as here, both parties file dispositive cross motions for summary judgment, and the court grants one and overrules the other, the appellate court has jurisdiction to review both the grant and the denial. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). In such a case, the appellate court is to review the summary judgment evidence presented by each party, determine all questions presented, and render judgment as the trial court should have rendered. *Id.*; *Comm'rs Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997); *Harris v. Hines*, 137 S.W.3d 898, 902–03 (Tex. App.—Texarkana 2004, no pet.).

## IV. Applicable Law and Discussion

Our chief concern in construing a will is to ascertain the true intent of the testator as expressed in the instrument. *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000); *Hines*, 137 S.W.3d at 903. In doing so, "[t]he intent must be drawn from the will, not the will from the intent." *Lang*, 35 S.W.3d at 640. This intent must be ascertained from the language

7

found within the four corners of the will. *Odeneal v. Van Horn*, 678 S.W.2d 941, 942 (Tex. 1984). Therefore, when the intent of the testator is apparent on the face of the will, extrinsic evidence is not admissible to contradict the intent. *Id*. In determining the testator's intent, the court focuses not on what the testator intended to write, but the meaning of the words actually used. *Lang*, 35 S.W.3d at 639.

"If the will is unambiguous, [we will] not go beyond specific terms in search of the [testator's] intent." *Id.* If the instrument "can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe [it] as a matter of law." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Doggett v. Robinson*, 345 S.W.3d 94, 99 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

If, on the other hand, the meaning of the instrument is uncertain or reasonably susceptible to more than one meaning, it is ambiguous and extrinsic evidence should be considered to ascertain the testator's intent. *See Davis v. Shanks*, 898 S.W.2d 285, 286 (Tex. 1995); *Harris*, 137 S.W.3d at 902–03. A will is ambiguous only when the established rules of construction leave its terms susceptible to more than one reasonable meaning. *Steger v. Muenster Drilling Co.*, 134 S.W.3d 359, 373 (Tex. App.—Fort Worth 2003, pet. denied).

### A. The Trial Court Erred in Granting Summary Judgment to Beverly

The core issue we must decide is whether the will provides that the corpus of each separate trust—for C.M., Jr. and for Jerry—is to be divided into three equal shares for Beverly, Texie, and

Clint, III, or whether the will directs the respective trust assets to pass directly to the descendants of the son in whose name each trust was established.

The testators' last wills[10] establish two separate and distinct trusts—for C.M. Beckett, Jr. and for Jerry B. Beckett. Beverly maintains she is the sole beneficiary of Jerry's trust and alone is entitled to distribution of the remaining assets of that trust. Likewise, Beverly alleges that Texie and Clint, III are the sole beneficiaries of C.M., Jr.'s trust, and they alone are entitled to distribution of the remaining assets of that trust.

Indeed, the will establishes two separate trusts:

> The trustees shall divide the residue of my estate into two equal parts. Each such part shall be administered as a separate and distinct trust. One of said parts shall be designated in the name of my son, C.M. Beckett, Jr., and the other part in the name of my son, Jerry B. Beckett. For so long as my wife [husband] lives. . . . After provision has been made for my wife [husband] out of the income of the trusts, there shall be distributed to my son, C.H. Beckett, Jr., all of the remaining income of the trust created in his name, and similarly there shall be distributed to my son, Jerry B. Beckett, all of the remaining income of the trust created in his name. Upon the death of my wife [husband], there shall be paid to each of my sons all of the income of the trust created in the name of such son. . . . Subject to the payment herein provided for my wife [husband] and the wives of my sons, in the event of the death of either of my sons, the balance of the income of the trust created in the name of such son may, in the discretion of the trustees, be used for the support, education and maintenance of the child or children of such sons.

There is no question a trust was established in the name of C.M., Jr., and a separate trust was established in Jerry's name, each of which was funded with one-half of the residue of Mr. and Mrs. Beckett's respective estates. However, the establishment of separate trusts with the

---

[10]The wills of C.M. Beckett, Sr., and Jo B. Beckett are identical insofar as the trust provisions are concerned. Accordingly, both wills shall be referred to as "the will."

9

provision of income to each son for life does not answer the question of the correct distribution of the corpus of each trust upon the death of C.M., Jr. (the last to die).

Texie points to Section VI(b) in support of her position that the corpus of each trust is to be divided equally among the grandchildren/great-grandchildren:

> Each of the trusts herein created shall continue for the life of my wife [husband] and for the lives of both of my sons. Upon the death of my wife [husband] and my two sons, all of the assets and properties of the trusts herein created shall be divided into as many equal shares as there are children of my two sons surviving, together with an equal share per stirpes for the surviving child or children of any deceased grandchild, and such shares shall be immediately distributed to said grandchildren or great-grandchildren. . . .

Texie specifically relies on the language to the effect that "all of the assets and properties of the trusts herein created shall be divided into as many equal shares as there are children of my two sons surviving. . . ." Even though two separate trusts were created and the income from each was separately paid during the lifetimes of the two brothers, upon the death of the last of the surviving brothers, Texie maintains Section VI(b)[11] separates the corpus of each trust into three separate shares, to be paid to the surviving grandchildren (Beverly and Clint, III) and great-grandchild (Texie). We agree.

It is clear that all trust assets are to be divided.[12] Texie logically maintains that "the trusts herein created" refer both to the C.M. Beckett, Jr. Trust and the Jerry B. Beckett Trust. Further,

---

[11]Section VI(b) in Jo's will mirrors Section VII(b) in C.M., Sr.'s will.

[12]Beverly argues that the assets in the two trusts, according to the will, are to be recombined *only* in the event one of the sons dies without heirs:

10

the "children of my two sons surviving" identifies those grandchildren surviving—C.M., Jr.'s sole surviving child, Clint, III, and Jerry's sole surviving child, Beverly. The phrase "the surviving child or children of any deceased grandchild" identifies Texie, the surviving child of Jo Lynn Beckett Dyke, the deceased child of C.M., Jr. This language cannot logically be interpreted as a bequest to Beverly of 100 percent of the assets of Jerry's trust.

Texie also relies on the termination provision in support of her interpretation—i.e., neither trust terminates until the death of the last surviving son.[13] If the corpus of each trust was to be distributed to the descendants of the brother in whose name that trust was established (as Beverly argues), then it would be logical for each trust to terminate on the death of the son in whose name the trust was established. Under this scenario, when Jerry died in 1986, his separate trust would have then terminated and the corpus distributed to Beverly. In accordance with the provisions of the will, however, Jerry's trust did not terminate in 1986; rather, it terminated in 2007 when C.M., Jr. died. From the time her father died in 1986, Beverly continued to receive income only from Jerry's trust, in accordance with the provisions of the will.

> Notwithstanding any other provisions of this Will, if either of my sons in whose name a trust is created should predecease me or die prior to the termination of the trust herein created in his name without surviving child, children or descendants, or should there be surviving child, children or descendants, all of whom thereafter die prior to the termination of such trust, then the assets of such trust shall be incorporated in the other trust created in the name of my other son. . . .

Beverly therefore maintains that because recombination of trust assets occurs only in this limited circumstance, Texie's reading of the will is incorrect. Texie, however, does not contend the assets of the two trusts should be combined and then divided three ways. Rather, she contends the trust assets of each trust be divided into three shares.

[13]There is no dispute regarding the date on which the trusts terminated, i.e., the date of C.M., Jr.'s death—April 25, 2007. The will provides, "Upon the death of my wife [husband] and my two sons, all of the assets and properties of the trusts herein created shall be divided into as many equal shares as there are children of my two sons surviving. . . ."

11

Beverly relies on the will's power of appointment[14] in support of her position that she is the sole beneficiary of the Jerry B. Beckett Trust, while Texie and Clint, III are the sole beneficiaries of the C.M. Beckett, Jr. Trust:

> I hereby direct that each of my sons shall have the following power of appointment over the portion of estate which the children and grandchildren of such son would otherwise be entitled to receive whereby such son at his death, by his last Will, may determine the amount which each of his children and grandchildren shall receive, and may impose such terms, provisions and conditions, and may establish such trusts in respect of such portion as he shall determine in his last Will.

Beverly reads the power of appointment to apply only to the trust corpus of each separate trust, so that Jerry would have a power of appointment only over the corpus of the trust established in his name, and C.M., Jr. would have a power of appointment only over the corpus of the trust established in his name. If, in fact, the power was so restricted, its inclusion in the will would lend support to Beverly's position that she is entitled to 100 percent of the assets of Jerry's trust.

However, the power is not restricted in the manner Beverly suggests. It is limited only to "the portion of the estate" that each son's "children and grandchildren would otherwise be entitled to receive." It does not answer the question of *what portion* of the estate each son's children and grandchildren are entitled to receive. The description of the target of the power does not contradict the plain language of the will stating that "all of the assets and properties of the trusts

---

[14]"A power of appointment is a power of disposition given to a person over property not his own, by [someone] who directs the mode in which that power shall be exercised by a particular instrument." *Republic Nat'l Bank of Dallas v. Fredericks*, 283 S.W.2d 39, 46 (1955) (internal quotation marks omitted). "It is an authority to do an act which the owner granting the power might himself lawfully perform." *Id.* (internal quotation marks omitted). This power enables the donee to designate, within such limits as the donor may prescribe, the transferees of the property or the shares in which it shall be received. *Id.*; *Doggett*, 345 S.W.3d at 99.

herein created shall be divided into as many equal shares as there are children of my two sons surviving. . . ." The inclusion of the power of appointment is consistent with this language; it does not seek to define the portion of trust assets to which each beneficiary is entitled. Rather, it merely permits each son to exercise the appointment power over "the portion of the estate" his children and grandchildren would otherwise be entitled to receive.

When C.M., Jr. made his will, he chose to exercise the power of appointment, while Jerry did not.[15] C.M., Jr.'s exercise of this power merely required Clint, III's portion of the trust assets to be held in trust for his benefit. Otherwise, the power of appointment plays no role in the determination of the summary judgment issues.

---

[15]C.M., Jr.'s will provides, in relevant part:

PART II - - EXERCISE OF SPECIAL POWERS OF APPOINTMENT
I am the donee of two special powers of appointment given to me under (i) subsection (b) of Section VII of the will of my father, C.M. Beckett, Sr., dated October 5, 1957, and (ii) subsection (b) of section VI of the will of my mother, Jo B. Beckett, dated October 10, 1957. I hereby expressly exercise such powers of appointment by appointing all of the trust assets subject to such powers to the same beneficiaries and in accordance with the same terms and conditions as set forth for my residuary estate in Part IV of this will, below.

The residuary provision in part IV of C.M., Jr.'s will provides:

PART IV - - RESIDUARY ESTATE
I give all the rest of my estate ("residuary estate") to the following beneficiaries in the following shares:

1.0 Clint's Share. If my son, CLENTIS MURL BECKETT, III survives me, I give one-half (1/2) of my residuary estate to my trustee, in trust, to be held and administered for Clint's benefit in accordance with Section 2 of this Part IV, below ("Clint's share").

1.2 Texie's Share. If my granddaughter, TEXIE BECKETT CARSON NASH, survives me, I give one-half (1/2) of my residuary estate to Texie ("Texie's share").

Beverly further relies on the perpetuities clause[16] in support of her interpretation of the will:

> The trusts herein created shall in any event terminate not later than twenty-one (21) years from and after the death of the survivor of myself, my wife, Jo B. Beckett, [my husband, C.M. Beckett, Sr.,] and all of my children and descendants living at my death, and upon such termination, the assets and properties comprising each particular trust theretofore not finally terminated shall be delivered and distributed, absolutely and in fee simple and free of trust, unto those parties who at the time of such termination constitute the income beneficiaries of that particular trust in the respective proportions in which said respective beneficiaries shall be receiving or entitled to receive income from said trust at the time of such termination.

There is no dispute the trusts did not terminate in accordance with this clause. However, in the event the foregoing clause acted to terminate the trusts, Beverly correctly recognizes the trust assets in Jerry's trust would have gone to her, as the sole income beneficiary of that trust. This provision—dividing the collective assets of each particular trust among those parties who are the income beneficiaries of each trust—appears to reflect the intent that the corpus of each trust be devised to the descendants of the original income beneficiary of that trust. Said another way, it would appear that the testators would not have determined to devise each respective trust corpus differently in the event termination was accomplished via the perpetuities clause as opposed to

---

[16]The Texas Property Code provides:

> The rule against perpetuities applies to trusts other than charitable trusts. Accordingly, an interest is not good unless it must vest, if at all, not later than 21 years after some life in being at the time of the creation of the interest, plus a period of gestation. Any interest in a trust may, however, be reformed or construed to the extent and as provided by Section 5.043.

TEX. PROP. CODE ANN. § 112.036 (West 2007).

14

termination upon the death of the last living income beneficiary.

Even so, it is the testator's prerogative to include differing dispositive language in a provision which terminates the trusts in accordance with the perpetuities clause from the dispositive language of the last to die provision under which the trusts were actually terminated. The perpetuities clause does not contradict the dispositive language terminating the trusts and directing how the assets should be distributed. The inclusion of this clause provided an alternate method of asset distribution in the circumstance the trusts were terminated in accordance with its provisions. The trusts terminated at the death of the last survivor of the testators and their two sons, not because of this provision. Further, due to the manner in which the will was drafted, this clause could not have been dispositive. Because the trusts have already terminated, and this clause only addresses distribution of trust assets in the event they have not terminated within the time frame set forth in the rule against perpetuities, it is not relevant to the issue of how the trust assets are to be divided.

Texie and Beverly each maintain the will is reasonably susceptible only to one meaning. Texie claims the definite or certain meaning of the will is clear—that the corpus of each trust should be divided in three, equal shares. Conversely, Beverly claims the definite or certain meaning of the will is clear—that the corpus of each trust is devised only to the children/grandchildren of the son in whose name the trust was established.

All rules of will construction must yield to the basic intention and purpose of the testator as

reflected by the entire instrument. *Wright v. Greenberg*, 2 S.W.3d 666, 672 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (citing *Shriner's Hosp. for Crippled Children of Tex. v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980)). Here, the plain language of Section VI(b), together with the termination clause, reflects the clear intent to divide each trust corpus into equal shares for the testator's grandchildren and/or great-grandchildren. The trial court therefore erred in granting Beverly's motion for summary judgment.

### B. Beverly Failed to Raise A Material Fact Issue on Her Affirmative Defenses

Texie sought summary judgment on each of the affirmative defenses asserted in Beverly's answer, pursuant to Rules 166a(c) and 166(a)(i) of the Texas Rules of Civil Procedure.[17] She maintains on appeal that the trial court erred in denying her motion for summary judgment on Beverly's affirmative defenses because no evidence supported one or more elements of each defense.

Because she has demonstrated there are no material fact issues on the elements of her claim, Texie is entitled to summary judgment unless Beverly comes forward with a showing that there is a disputed fact issue upon affirmative defense. *See Gulf, C. & S.F.R. Co. v. McBride*, 322 S.W.2d 492, 500 (Tex. 1958). An affirmative defense will prevent the granting of summary

---

[17]The trial court denied Texie's motion for summary judgment in total. A party moving for summary judgment pursuant to Rule 166a(c) must establish that no material fact issue exists and that he or she is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). A party moving for summary judgment under Rule 166a(i) must show that after an adequate time for discovery has passed, "there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. . . " TEX. R. CIV. P. 166a(i).

judgment only if each element of the affirmative defense is supported by summary judgment evidence. *Barrand, Inc. v. Whataburger, Inc.*, 214 S.W.3d 122, 143 (Tex. App.—Corpus Christi 2006, pet. denied). Accordingly, Texie is entitled to summary judgment as a matter of law unless Beverly can show each element of at least one of her affirmative defenses is supported by summary judgment evidence.

Beverly relies on the equitable affirmative defenses of judicial estoppel, estoppel by deed, equitable estoppel, waiver and quasi-estoppel.

### (1) Judicial Estoppel

Judicial estoppel requires a showing of (1) a sworn, inconsistent statement made in a prior judicial proceeding, (2) the party making the statement gained some advantage by it, (3) the statement was not made inadvertently or because of mistake, fraud, or duress, and (4) the statement was deliberate, clear, and unequivocal. *Galley v. Apollo Associated Servs.*, 177 S.W.3d 523, 528–29 (Tex. App.—Houston [1st Dist.] 2005, no pet.). "The doctrine of judicial estoppel 'precludes a party from adopting a position inconsistent with one that it maintained successfully in an earlier proceeding.'" *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008) (quoting 2 ROY W. MCDONALD & ELAINE G. CARLSON, *Texas Civil Practice* § 9.51 at 576 (2d ed. 2003).

This affirmative defense is based on the inventory, appraisal and list of claims Texie filed

17

as the executrix of C.M., Jr.'s estate.[18] Beverly claims this inventory presents a sworn, inconsistent statement made in a prior judicial proceeding in which Texie is unequivocally asserting that the properties belonging to C.M., Jr.'s trust are assets of C.M., Jr.'s estate.[19] As such, Beverly argues that Texie is representing to a court outright ownership of trust assets to be distributed under the terms of C.M., Jr.'s will rather than in accordance with the terms of the will creating the trust.

Texie claims that a listing of trust properties on the inventory does not reflect any position she may have taken regarding the identity of the beneficiaries of the assets of C.M., Jr's trust. The dispute here is not the identification of property to be distributed from the trusts, but is the identification of the ultimate beneficiaries and the percentage of trust assets each is to receive. We find nothing in the inventory, appraisal, and list of claims demonstrating a clear and unequivocal statement that is inconsistent with an assertion that the trusts are to be divided evenly by the beneficiaries. Beverly has failed to raise a material fact issue relative to this affirmative

---

[18]The inventory, appraisal, and list of claims filed by Texie lists the separate property of C.M., Jr., as:

| | |
|---|---|
| Real Estate | 203,360.60 |
| Stocks and Bonds | 71,360.46 |
| Mortgages, Notes and Cash | 53,305.49 |
| Miscellaneous property | 22,000.00 |
| | |
| Total | 350,026.55 |

No claims due or owing to the estate were listed.

[19]Neither party has identified which property listed on the inventory, appraisal, and list of claims is alleged to be trust property.

defense.[20]

### (2) Estoppel by Deed

This affirmative defense prevents a party from denying the truth of matters set forth in a deed the party has offered as grantor or has accepted as grantee. *Greene v. White*, 153 S.W.2d 575, 583 (Tex. 1941). This concept "stands for the general proposition that 'all parties to a deed are bound by the recitals therein, which operate as an estoppel, working on the interest in the land if it be a deed of conveyance, and binding both parties and privies. . . .'" *Angell v. Bailey*, 225 S.W.3d 834, 841 (Tex. App.—El Paso 2007, no pet.). Estoppel by deed may be involved only in a suit on the deed or concerning a right arising from the deed. *See Perry Nat'l Bank v. Eidson*, 340 S.W.2d 483, 486 (Tex. 1960).

Beverly contends that C.M., Jr. treated those properties in the C.M., Jr. trust as belonging to himself or his lineal descendants because he deeded several such properties to others, as well as to himself.[21] While this complaint may be appropriate for the severed "Distribution Issue," it

---

[20]In her answer, Beverly relies on the final partition judgment issued in 1983 in support of her affirmative defense of judicial estoppel. Beverly's summary judgment response and her briefing on appeal both point solely to the inventory, appraisal, and list of claims Texie filed in connection with C.M., Jr.'s estate.

[21]The transfers from the C.M. Beckett, Jr. Trust are as follows:

(1) 10-27-1992: Warranty Deed from C.M. Beckett, Jr. as Trustee of the C.M. Beckett, Jr. Trust to George and Annamarie Whaley – transferring a lot, tract or parcel of land situated in Harrison County;

(2) 2-11-1994: Warranty Deed from C.M. Beckett, Jr. as Trustee of the C.M. Beckett, Jr. Trust to George and Annamarie Whaley – transferring a lot, tract, or parcel of land situated in Harrison County;

(3) 2-11-1994: Warranty Deed from C.M. Beckett, Jr. as Trustee of the C.M. Beckett, Jr. Trust to George Whaley – transferring a lot, tract, or parcel of land situated in Harrison County (.913 acres of land);

does not apply here because this matter does not involve a suit on a deed or a right arising from a deed. Rather, this matter concerns the appropriate division of the trusts' assets among the beneficiaries. No material fact issue exists with respect to this affirmative defense.

### (3) Equitable Estoppel

The affirmative defense of equitable estoppel requires a showing of (1) a false representation or concealment of material facts, (2) made with actual or constructive knowledge of those facts, (3) to a party without knowledge, or the means of knowledge, of those facts, (4) with the intention that it should be acted on, and (5) the party to whom it was made must have relied or acted on it to his or her prejudice. *In re A.L.G.*, 229 S.W.3d 783, 786 (Tex. App.—San Antonio 2007, no pet.).

Beverly incorporated equitable estoppel (as well as quasi-estoppel) in her motion for summary judgment. The equitable estoppel argument is based on the actions of C.M., Jr. in transferring assets from the C.M. Beckett, Jr. Trust.[22] The position taken by Texie necessarily

---

(4) 2-9-1996: Warranty Deed from C.M. Beckett, Jr. as Trustee of the C.M. Beckett, Jr. Trust to C.M. Beckett, Jr. – transferring parcel of land containing 3.215 acres in Harrison County.

(5) 12-10-1999: Warranty Deed from C.M. Beckett, Jr. as Trustee of the C.M. Beckett, Jr. Trust to C.M. Beckett, Jr. – transferring two parcels of land situated in Harrison County.

(6) 3-17-2003: Warranty Deed from C.M. Beckett, Jr. as Trustee of the C.M. Beckett, Jr. Trust to George and Annamarie Whaley – transferring (either .725 or 7.25) acres of land situated in Harrison County.

We point out that C.M., Jr., as the trustee of the C.M. Beckett, Jr. Trust, was authorized to transfer trust property. There is no evidence in the record reflecting the disposition of the proceeds of the referenced transfers.

[22]*See* footnote 21, *supra*.

20

implies that Beverly is, and always was, a vested remainder beneficiary of the C.M. Beckett, Jr. Trust. Beverly therefore claims that C.M., Jr., in his capacity as trustee, had a duty to inform Beverly of all transactions affecting the trust. *See Johnson v. Peckham*, 120 S.W.2d 786, 788 (Tex. 1938). In failing to do so, Beverly basically alleges a breach of fiduciary duty claim. Because all such claims were severed by the trial court,[23] we do not consider them here.

### (4) Waiver

The affirmative defense of waiver requires a showing of (1) an existing right, benefit, or advantage, (2) actual or constructive notice of its existence, and (3) an actual intent to relinquish that right. *Hourani v. Katzen*, 305 S.W.3d 239, 256 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Beverly relies on the inventory, appraisal, and list of claims in support of this affirmative defense, but fails to explain why this evidence supports this affirmative defense. Beverly has failed to raise a fact issue with respect to the affirmative defense of waiver.

### (5) Quasi-Estoppel

The affirmative defense of quasi-estoppel precludes another party from asserting, to another's disadvantage, a right inconsistent with a position he or she has previously taken. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). The doctrine applies when it would be unconscionable to allow a party to maintain a position inconsistent with one in which

---

[23]*See* footnote 7, *supra*.

he or she acquired or by which that party accepted a benefit.  *In re Estate of Webb*, 266 S.W.3d 544, 552 (Tex. App.—Fort Worth 2008, pet. denied); *Vessels v. Anschutz Corp.*, 823 S.W.2d 762, 765–66 (Tex. App.—Texarkana 1992, writ denied).   However, before the acceptance of benefits can trigger estoppel, it must be shown that the benefits were accepted with knowledge of all material facts. *Anadarko Petroleum Corp. v. Thompson*, 60 S.W.3d 134, 142 (Tex. App.—Amarillo 2000), *rev'd on other grounds*, 94 S.W.3d 550 (Tex. 2002); *see Frazier v. Wynn*, 472 S.W.2d 750, 753 (Tex. 1971).

Beverly alleged quasi-estoppel as an affirmative defense and further asserted this equitable theory as a basis for summary judgment.[24]   On appeal, Beverly argues that the inventory, appraisal, and list of claims Texie filed relative to C.M., Jr.'s, estate in 2007 is tantamount to a representation that C.M., Jr.'s will is determinative of the distribution scheme of the assets listed on the inventory.   This is contrary to the method of distribution set out in the will which established the trusts.   Beverly claims that under C.M., Jr.'s will, "Texie would take 1/2 under Junior's will and a 1/3 under Senior's and Jo's wills."

In her motion for summary judgment, Beverly relies on the following evidence in support of her quasi-estoppel argument:   (1) C.M., Jr.'s will, (2) application for probate of C.M., Jr.'s will, (3) order admitting C.M. Jr.'s will to probate, and (4) the inventory, appraisal, and list of claims relative to C.M., Jr.'s estate.   Beverly contends that because Texie already accepted assets

---

[24]The summary judgment was not based on quasi-estoppel.

belonging to C.M., Jr.'s trust, she is precluded from asserting rights to properties in Jerry's trust.

The power of appointment authorized C.M., Jr. to designate by his will, from their portion of the trust, the amount that each of his children and grandchildren would receive from the trust distribution. It also allowed him to impose terms and establish trusts in respect of such portions distributed. C.M., Jr.'s will specifically invoked the power of appointment and designated the portion bequeathed to Texie in trust for Clint, III. This property apparently was a part of C.M., Jr.'s trust.[25] C.M., Jr. left two bequests to Texie, for herself—one-half of his personal effects, motor vehicles, and other tangible personal property (not claimed to be a part of the trust) and one-half of the residuary of his estate. These designations or appointments were not in contravention of the wills of C.M., Sr., and Jo, and C.M., Jr's will specifically referenced this grant of authority by his parents' wills.[26]

Texie contends nothing in the inventory addresses the identity of the Trusts' ultimate beneficiaries. Further, C.M., Jr.'s decision to invoke his power of appointment and bequeath certain assets to Texie does not reflect any prior position Texie may have taken regarding the identity of the Trusts' ultimate beneficiaries. Texie therefore contends that Beverly is unable to

---

[25]Texie was gifted, as trustee for Clint, III: "Property One," identified as "being a part of the land described in deed to C.M. Beckett, Jr. Trusts . . ." and "Property Two," "the same being a part of the land described in deed to C.M. Beckett, Jr. Trusts . . . ."

[26]The application for probate indicates C.M., Jr. owned a residence, other real estate, oil and gas interests, bonds, cash, motor vehicles, and personal effects. The residence and some of the "other real estate" was bequeathed to Texie in trust for Clint, III. The motor vehicle and personal effects were divided between Texie and Clint, III. Thus, the oil and gas interests, cash, bonds, and perhaps some of the "other real estate" are likely a part of the residuary.

establish that Texie's present position is inconsistent with any earlier position she may have taken.

We cannot conclude Beverly has provided summary judgment evidence of her assertion that Texie has taken inconsistent positions such that it would be unconscionable to permit her to assert her contentions regarding the proper interpretation of the will. C.M., Jr.'s will clearly acknowledges the trust and the power granted to him by his parents' wills and attempted to invoke that power of appointment. As previously discussed, the inventory, appraisal, and list of claims do not reflect any position Texie may have taken regarding the identity of the beneficiaries of the assets of C.M., Jr.'s trust. Further, there is no summary judgment evidence that Texie has actually accepted benefits. Even if Texie received such a bequest, Texie has never asserted that she has no interest in the Jerry B. Beckett Trust or that Beverly is not entitled to a portion of the C.M. Beckett, Jr. Trust. The decision to attempt to utilize the power of appointment to distribute trust holdings to Texie and Clint, III was that of C.M., Jr., and would not reflect Texie's position regarding the proper distribution of trust assets. Consequently, we cannot say that Beverly has carried the burden on appeal to illustrate the existence of a material fact issue with regard to the defense of quasi-estoppel.

Even assuming, as Beverly argues, that Texie received property which formerly belonged to the C.M. Beckett, Jr. Trust, quasi-estoppel is not applicable here. Estoppel is defensive in nature. *Hruska v. First State Bank*, 747 S.W.2d 783, 785 (Tex. 1988). That is, it exists to prevent the loss of existing rights, not to create them. *Id.* As previously discussed, the will

24

provides that each grandchild/great-grandchild is to receive an equal share of both trusts. The termination provisions of the trusts entitle Texie, Beverly, and Clint, III to one-third of the assets of Jerry's trust and one-third of the assets of C.M., Jr.'s trust. The doctrine of quasi-estoppel cannot be invoked defensively to create rights that do not exist otherwise—i.e., that Beverly receive 100 percent of Jerry's trust and Texie and Clint, III 100 percent of C.M., Jr.'s trust. Beverly therefore cannot invoke the doctrine of quasi-estoppel to fill the void in order to receive the entirety of the trust.

## V.     Conclusion

We reverse the judgment of the trial court and render judgment in favor of Texie. Beverly, Texie, and Clint, III are each entitled to an equal share of the Jerry B. Beckett Trust and the C.M. Beckett, Jr. Trust. This opinion does not purport to resolve any issues severed by the trial court.


                                                            Jack Carter
                                                            Justice


Date Submitted:        February 15, 2012
Date Decided:          March 23, 2012


25