

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-12-00086-CV

---

ESTATE OF LARKIN ANSON JONES, DECEASED, Appellant

---

On Appeal from the County Court at Law
Rusk County, Texas
Trial Court No. 08-143-P

---

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

## O P I N I O N

Larkin Anson Jones died in 2008, survived by his wife, Myrna S. (Hellen) Jones, as well as children by his former, predeceased wife, including Larkin's son, Ronnie Jones. Hellen and Ronnie were named co-executors in Larkin's Will. At the time of his death, Larkin owned two Hartford variable annuity contracts (the variable annuities) payable to the Estate of Larkin Anson Jones that paid lump-sum death benefits totaling $486,986.12.[1] A dispute developed between Hellen and Ronnie over whether the death benefits from the variable annuities was income,[2] to which Hellen would be entitled, or principal. If the benefits were classified as principal, Hellen would be entitled only to income generated by that principal.[3] On competing motions for

---

[1]In 1994, Larkin purchased the first variable annuity from Hartford Life and Annuity Company (Contract 704). Jones purchased the other variable annuity from Hartford in 1998 (Contract 308). The named beneficiary of each contract was the Estate of Larkin Anson Jones. When Jones passed away in September 2008, the annuity contracts matured, and death benefits totaling $486,986.12 became payable—in a lump sum—to Jones' Estate. The actual amount of the death benefit varies throughout the record; the trial court's order before us recites the amount we use here.

[2]Before the competing summary judgment motions served up the issues on this appeal, Hellen had previously asked the trial court to interpret certain of the Will's provisions. In that round of the battle, also, the parties had filed competing motions for summary judgment, and, in December 2011, the trial court had entered an order partially granting motions for summary judgment, ruling that all net income earned in the Will's Marital Trust and Family Trust would belong to Hellen for her lifetime. The summary judgment order did not, however, resolve the parties' remaining dispute—whether the amount by which the variable annuities increased in value at the death of Larkin is properly considered principal payable to the Marital Trust or income payable to Hellen.

[3]Jones' Will was admitted to probate in the County Court at Law of Rusk County, Texas, in October 2008. Jones' Will divided his estate between Hellen and four children by his previous wife. The remainder of the estate was divided into a marital trust and a family trust. With respect to the marital trust, the Will provides:

> 4.2     If my wife survives me, I give, devise and bequeath unto my Trustees hereinafter named, to be known as the MYRNA S. (HELLEN) JONES Marital Trust, (the marital deduction amount) an amount equal to the value of my residuary estate which, when added to all other assets of my gross estate that qualify for federal estate tax marital deduction and that passed or have passed to or for the benefit of my wife otherwise then by the terms of this Article Four (IV) hereof, is equal to the maximum marital deduction which is allowable under Section 2056 of the Internal Revenue Code.

summary judgment, the trial court ruled that the death benefits were principal.[4] Hellen appeals.

On appeal, Hellen contends that the trial court erred in determining she was not entitled to the

death benefit of $486,986.12 payable by the variable annuities because such benefit constitutes

With respect to the family trust, the Will provides:

>5.1     To my Trustees, I give, devise and bequeath all of my residuary estate not passing under Article Four (IV) above, in trust nevertheless, for the use and benefit of my wife during her lifetime, to be called the LARKIN ANSON JONES Family Trust to be held for my wife under Article Eleven (XI) hereof, and the following provisions:

>>(a) As long as my wife lives, my Trustees shall pay to my wife all of the net income of the trust, in quarter-annual or more frequent installments, and may pay to my wife such principal of the trust as my Trustees or their successors, in their sole judgment may determine is necessary for the health, education, support, or maintenance in my wife's accustomed standard of living.  Anything in this Will notwithstanding, my wife may require that the net income be distributed directly to her and that my Trustees convert unproductive trust property to productive trust property within a reasonable period of time; and undistributed net income at my wife's death (whether accrued or collected) shall be paid to my wife's estate.

>>(b) Unless the properties of the trust are sooner exhausted, the trust shall terminate on my wife's death.  The principal of the trust shall then pass and be paid to my children or their lineal descendants as provided in Article Eight (VIII).

[4]These were the second set of competing motions for summary judgment.  The trial court determined that "the $486,986.12 lump sum Death Benefit" from Hartford Annuity Contracts 704 and 308 "is not 'internal income' as defined in Section 116.172 of the Texas Trust (Property) Code but is properly allocated to principal under Section 116.164 of the Texas Trust (Property) Code."  Accordingly, the trial court determined that Hellen

>is not entitled to additional distributions from Hartford Annuity Contract 704 and Hartford Annuity Contract 308 (the "Hartford Annuities") because "internal income" as defined in Section 116.172(j) of the Texas Trust Code means the income portion of installment payments that a fiduciary receives as current income earned from a principal asset in a calendar year, specifically the excess of installment payments to be made by the Hartford over the purchase price paid by the Co-Executors of the Estate of Larkin Anson Jones ($94,812.10) paid over the five (5) year term.  Such amounts have been paid except for "internal income" in the unpaid installments due in 2012 and 2013.

>IT IS THEREFORE DECLARED, ORDERED, ADJUDGED AND DECREED that Myrna S. (Hellen) Jones is not entitled to additional distributions from the Hartford Annuities because net income required to be distributed under the Myrna S. (Hellen) Jones' Marital Trust under Section 4.7 of the Last Will and Testament of Larkin Anson Jones is income earned during a calendar year and such amounts have been paid.

The trial court entered a separate order denying Hellen's motion for summary judgment.

"internal income" as defined by the Texas Trust Code. Because the trial court correctly decided that the death benefits from the variable annuities were properly defined as principal, we affirm the judgment.

A traditional motion for summary judgment is granted only when the movant establishes there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *Mann Frankfort Stein & Lipp Advisors*, *Inc. v. Fielding*, 289 S.W.3d 844, 847 (Tex. 2009). An appellate court reviews de novo the grant or denial of a motion for summary judgment. *Id.* Where, as here, both parties file dispositive cross motions for summary judgment, and the court grants one and overrules the other, the appellate court has jurisdiction to review both the grant and the denial. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). Thus, in this case, we are to review the summary judgment evidence presented by each party, determine all questions presented, and render judgment as the trial court should have rendered. *Id.*; *Comm'rs Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997); *Nash v. Beckett*, 365 S.W.3d 131, 136 (Tex. App.—Texarkana 2012, pet. denied).

*(1)   The Original Death Benefits Were Properly Classified as Principal*

Although there is little Texas law to guide us on this issue, a few statutory provisions are helpful in its resolution. Hellen concedes that Section 116.164 of the Texas Property Code would typically require a Trustee to allocate the increase in value resulting from the death benefit feature of the annuities to principal,[5] but argues that circumstances here do not so require. Hellen claims that, because Section 116.164 does not apply to a contract to which Section 116.72

---

[5]While Hellen, here, stops well short of any admission damaging her case, we agree that the death benefit should be allocated to principal. We also conclude that the circumstances she cites do not change that proper allocation.

4

applies, Section 116.164 does not apply here.  TEX. PROP. CODE ANN. § 116.164 (West 2007).

Section 116.164 provides:

> (a)      Except as otherwise provided in Subsection (b), a trustee shall allocate to principal the proceeds of a life insurance policy or other contract in which the trust or its trustee is named as beneficiary, including a contract that insures the trust or its trustee against loss for damage to, destruction of, or loss of title to a trust asset. The trustee shall allocate dividends on an insurance policy to income if the premiums on the policy are paid from income, and to principal if the premiums are paid from principal.
>
> (b)      A trustee shall allocate to income proceeds of a contract that insures the trustee against loss of occupancy or other use by an income beneficiary, loss of income, or, subject to Section 116.153, loss of profits from a business.
>
> (c)      This section does not apply to a contract to which Section 116.172 applies.

TEX. PROP. CODE ANN. § 116.164.

Section 116.172, titled "Deferred Compensation, Annuities, and Similar Payments," provides, in part:

> (h)      Subsections (j) and (k) apply and Subsections (b) and (c) do not apply in determining the allocation of a payment made from a separate fund to:
>
> > (1)      a trust to which an election to qualify for a marital deduction under Section 2056(b)(7), Internal Revenue Code of 1986, has been made; or
> >
> > (2)      a trust that qualifies for the marital deduction under Section 2056(b)(5), Internal Revenue Code of 1986.

TEX. PROP. CODE ANN. § 116.172 (West Supp. 2012).[6] Hellen claims that Section 116.172(h) applies to the annuity contracts because they were allocated to a trust in which an election to qualify for a marital deduction under Section 2056(b)(7) of the Internal Revenue Code was made.[7] Hellen further contends that, because Section 116.172(h) applies, subsection (j) applies to the marital trust as well. Subsection (j) requires the trustee to "determine the internal income of the separate fund for the accounting period as if the separate fund were a trust subject to this code." TEX. PROP. CODE ANN. § 116.172(j). Hellen's expert, Craig Adams, an estate and probate attorney, opines in his affidavit that the difference between the value at the date of Jones' death and the value at the close of the accounting period ending December 31, 2008, is "internal income" generated by the annuities to which Hellen is entitled under Section 116.172(j) of the Texas Property Code. Accordingly, Hellen claims entitlement to the death benefit of $441,625.00 as internal income. We disagree.

On Jones' death, the variable annuity contracts matured, resulting in combined death benefits in the amount of $486,986.12 payable to Jones' estate in a lump sum. Paragraph 11.2(k) of Jones' Will provides the following instructions:

> (k) Power to Determine Income and Principal: Dividends payable in stock of the issuing corporation, stock splits and capital gains shall be treated as principal. Except as herein otherwise specifically provided, the Trustees shall have full power and authority to determine the manner in which expenses are to be borne and to which receipts are to be credited as

---

[6]"Payment" under this section "means a payment that a trustee may receive over a fixed number of years or during the life of one or more individuals because of services rendered or property transferred to the payer in exchange for future payments. The term includes a payment made in money or property from the payer's general assets or from a separate fund created by the payer." TEX. PROP. CODE ANN. § 116.172(2).

[7]Section 2056(b)(7) of the Internal Revenue Code allows for the election of a marital deduction when certain requirements are met. 26 U.S.C. § 2056(b)(7) (West 2002).

6

between principal and income, and also to determine what shall constitute principal or income, and may withhold from income such reserves for depreciation or depletion as it may deem fair and equitable. In determining such matters, the Trustees may give consideration to the provisions of the Texas Trust Code (or its successor statute) relating to such matters, but shall not be bound by such provisions.

Section 116.051 of the Texas Property Code provides that "a fiduciary of an estate . . . shall determine the amount of net income and net principal receipts received from property specifically given to a beneficiary. . . . The fiduciary shall distribute the net income and net principal receipts to the beneficiary who is to receive the specific property." TEX. PROP. CODE ANN. § 116.051 (West 2007). Jones purchased the variable annuities and named his Estate as the beneficiary under those contracts. Section 116.164 of the Texas Property Code, entitled "Insurance Policies and Similar Contracts," provides that, for income and principal allocation purposes, proceeds of a life insurance policy or other contract in which a trust or trustee is named as beneficiary shall be allocated to principal. Here, Jones' estate is the named beneficiary. Section 116.164 is persuasive, analogous authority that the death benefits (similar to insurance policy proceeds) were properly allocated as principal of Jones' estate.[8]  *See* TEX. PROBATE CODE

---

[8]Even Adams concedes that such analysis is correct, as stated in his affidavit: "The increase in value resulted from the 'death benefit' feature of the Annuities. As such, TPC Section 116.164 would require the Trustee to allocate such death benefit to principal. . . ."

Adams' opinion that the proceeds are not principal appears to us to be based, at least in part, on the fact that two five-year annuities were purchased with the proceeds of the two variable annuities and the five-year annuities were put into the Marital Trust. Hellen's apparent logic suggests that these changes, culminating some two years after Jones' death, made the death benefit proceeds into income. We do not find that logic persuasive. In fact, the purchase of the five-year annuities with the death benefits and their transfer into the Marital Trust—rather than distribution to Hellen's separate account, as was done with true income—suggests to us that, though the co-executors appear to have never explicitly or formally classified the death benefits as principal, they implicitly considered them principal that should be properly maintained and managed under the terms of a trust set out by the Jones Will.

ANN. § 378B (West 2003) (referring executor to Texas Trust Code when determining whether funds are income).

Moreover, the variable annuities were not subject to Section 116.172. Subsection (a)(2) defines "payment" as one "that a trustee may receive over a fixed number of years or during the life of one or more individuals . . . ." TEX. PROP. CODE ANN. § 116.172(a)(2). Here, Jones' estate was the beneficiary of the variable annuities. These funds were not payable to the Marital Trust or its trustees. Additionally, the variable annuities did not involve a payment over a fixed number of years or during the life of one or more individuals. Instead, a single payment, triggered by Jones' death, was to be made to the co-executors of Jones' estate under each annuity contract. The Estate asset was the payment of death benefits, not a right to receive future payments or annuity. Thus, the death benefits were properly classified as principal at the time they became due and payable.[9]

*(2)*     *The Initial Character of the Death Benefits Was Not Transformed by the Subsequent Purchase of the Five-Year Annuities or the Transfer of the Annuities from the Estate to the Marital Trust*

Hellen's contentions appear to be largely based on a flawed premise—that the initial character of the variable annuities' death benefits was transformed by the Estate's acquisition of the five-year annuities[10] and the subsequent transfer of those annuities to the Marital Trust.

---

[9]There is no indication in the record that the co-executors ever formally allocated the lump-sum death benefits to principal.

[10]In December 2008, the Co-executors elected to use the variable annuities' death benefits to obtain two fixed term annuities for a period of five years, payable in ten semi-annual installments with a rate of return of 5.37 percent (the five-year annuities). The Estate is named beneficiary of the five-year annuities. As of January 2010, three payments from the five-year annuities were received into the Estate account. In June 2010, the five-year annuities were transferred from the Estate to the Marital Trust. Thereafter, annuity payments of principal were credited to the

8

Contrary to Hellen's contention, the purchase of the five-year annuities with the lump-sum proceeds of the original annuity contracts cannot serve to re-classify assets previously allocated to principal. Section 116.161(2) of the Texas Property Code requires that "money or other property received from the sale, exchange, liquidation, or change in form of a principal asset, including realized profit, subject to this subchapter" be allocated to principal. TEX. PROP. CODE ANN. § 116.161(2) (West 2007). Accordingly, the purchase of the five-year annuities with the proceeds of the variable annuity contracts did not change the assets from principal to income.

In June 2010—almost two years after death benefits became payable to Jones' Estate— the five-year annuities were transferred from the Estate to the Marital Trust.[11] The subsequent transfer of the five-year annuities from Jones' Estate to the Marital Trust likewise did not transform the principal classification of the original death benefits. Section 116.152 of the Texas Property Code provides:

> A trustee shall allocate to income an amount received as a distribution of income from a trust or an estate in which the trust has an interest other than a purchased interest, and shall allocate to principal an amount received as a distribution of principal from such a trust or estate . . . .

TEX. PROP. CODE ANN. § 116.152 (West 2007). Thus, once allocated to principal,[12] neither the change in form resulting from the purchase of the five-year annuities, nor the subsequent

---

Marital Trust, while interest earned by the annuities was paid to Hellen. Each of the ten payments on the five-year annuities is $58,179.85. Each payment is allocated $9,481.10 to Hellen's income account and the remaining principal of $48,698.75 to the Marital Trust.

[11]Before the transfer of the five-year annuities from the Estate to the Marital Trust, accrued interest from the annuities was distributed to Hellen's separate account and the principal was paid to the Estate.

[12]As explained in the summary judgment affidavit of Diane Gibson, a licensed Certified Public Accountant, Certified Valuation Analyst, and Certified Forensic Financial Analyst,

distribution of those annuities to the Marital Trust changed the characterization of the original death benefits from principal to income.

Even so, Hellen was paid all to which she was entitled, that is, the income portion of the payments made under the five-year annuities. Each annuity was funded by death benefits from the variable annuities. The newer annuities were to be paid in ten payments, twice a year over a five-year period. Those ten payments totaled $581,798.50. Each payment is $58,179.85; $9,481.10 of each was interest to be paid to Hellen's income account, leaving $48,698.75 of each as principal to be paid to the Marital Trust.[13] The trial court correctly determined that Hellen is not entitled to additional distributions from the five-year annuities because net income required to be distributed under the Marital Trust (pursuant to Section 4.7 of Jones' Will) is income earned during a calendar year and such amounts have been paid.[14]

---

The difference in the Cash Value and the Death Benefit Value is the amount of benefits due to the owner as a result of the death of the annuitant, which includes the life insurance-type attributes included in the annuity contract. It is not income earned while the owner holds the annuity, but is more correctly classified as Income in Respect of a Decedent (IRD). IRD is income earned, but not received, before the decedent's death. This difference in the Cash Value and the Death Benefit Value becomes principal at the moment of the annuitant's death and is not "internal income" as referenced in Section 116.172(j) of Chapter 9 of the Texas Property Code ("Code"). Per § 116.002(4), income is "money or property that a fiduciary receives as current return from a principal asset." The death benefits are principal and not currently earned income. Only the amounts earned from investing the principal is classified as income by the Code.

[13]These payments reflect an allocation between principal and income in accordance with the terms of the five-year annuities and as reflected in a letter from Morgan Stanley/Smith Barney.

[14]The summary judgment evidence showed that payments to Jones' Estate commenced in 2009 per the terms of the payment agreements. The 2009 total payment was $174,539.00, of which $146,096.25 was placed in the Jones' estate account and $19,162.40 in interest was paid to Hellen as income. In 2010, Contracts 704 and 308 were transferred to the Marital Trust. Thereafter, Morgan Stanley/Smith Barney records reflect that principal payments were made to the Marital Trust while interest payments were made to Hellen in the years 2010–2012. This evidence was uncontradicted.

10

We affirm the judgment of the trial court.


Josh R. Morriss, III
Chief Justice

Date Submitted:    January 11, 2013
Date Decided:    February 20, 2013